GENERAL UTILITIES & OPERATING CO. *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 41. Argued November 15, 1935.—Decided December 9, 1935.

*Mr. Hugh C. Bickford,* with whom *Mr. R. Kemp Slaughter* was on the brief, for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Messrs. Sewall Key* and *Lucius A. Buck* were on the brief, for respondent.

By leave of Court, *Messrs. Laurence Arnold Tanzer* and *John W. Townsend* and *Messrs. Russell D. Morrill, Walter S. Orr,* and *Francis L. Casey* filed briefs as *amici curiae,* supporting the contentions of petitioner.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

January 1st, 1927, petitioner—General Utilities, a Delaware corporation—acquired 20,000 shares (one-half of total outstanding) common stock Islands Edison Company, for which it paid $2,000. Gillet & Company owned the remainder.

During January, 1928, Whetstone, President of Southern Cities Utilities Company, contemplated acquisition by his company of all Islands Edison common stock. He discussed the matter with Lucas, petitioner's president, also with Gillet & Company. The latter concern agreed

to sell its holdings upon terms acceptable to all. But Lucas pointed out that the shares which his company held could only be purchased after distribution of them among stockholders, since a sale by it would subject the realized profit to taxation, and when the proceeds passed to the stockholders there would be further exaction. Lucas had no power to sell, but he, Gillet and Whetstone were in accord concerning the terms and conditions under which purchase of all the stock might become possible— " it being understood and agreed between them that petitioner would make distribution of the stock of the Islands Edison Company to its stockholders and that counsel would prepare a written agreement embodying the terms and conditions of the said sale, agreement to be submitted for approval to the stockholders of the Islands Edison Company after the distribution of said stock by the petitioner."

Petitioner's directors, March 22, 1928, considered the disposition of the Islands Edison shares. Officers reported they were worth $1,122,500, and recommended an appreciation on the books to that figure. Thereupon a resolution directed this change; also " that a dividend in the amount of $1,071,426.25 be and it is hereby declared on the Common Stock of this Company payable in Common Stock of The Islands Edison Company at a valuation of $56.12½ a share, out of the surplus of the Company arising from the appreciation in the value of the Common Stock of The Islands Edison Company held by this Company, viz, $1,120,500.00, the payment of the dividend to be made by the delivery to the stockholders of this Company, pro rata, of certificates for the Common Stock of The Islands Edison Company held by this Company at the rate of two shares of such stock for each share of Company Stock of this Corporation."

Accordingly, 19,090 shares were distributed amongst petitioner's thirty-three stockholders and proper transfers

to them were made upon the issuing corporation's books. It retained 910 shares.

After this transfer, all holders of Islands Edison stock, sold to Southern Cities Utilities Company at $56.12½ per share. Petitioner realized $46,346.30 net profit on 910 shares and this was duly returned for taxation. There was no report of gain upon the 19,090 shares distributed to stockholders.

The Commissioner of Internal Revenue declared a taxable gain upon distribution of the stock in payment of the dividend declared March 22nd, and made the questioned deficiency assessment. Seeking redetermination by the Board of Tax Appeals, petitioner alleged, " The Commissioner of Internal Revenue has erroneously held that the petitioner corporation made a profit of $1,069,517.25 by distributing to its own stockholders certain capital stock of another corporation which it had theretofore owned." And it asked a ruling that no taxable gain resulted from the appreciation upon its books and subsequent distribution of the shares. Answering, the Commissioner denied that his action was erroneous, but advanced no new basis of support. A stipulation concerning the facts followed; and upon this and the pleadings, the Board heard the cause.

It found " The respondent has determined a deficiency in income tax in the amount of $128,342.07 for the calendar year 1928. The only question presented in this proceeding for redetermination is whether petitioner realized taxable gain in declaring a dividend and paying it in the stock of another company at an agreed value per share, which value was in excess of the cost of the stock to petitioner." Also, " On March 26, 1928, the stockholders of the Islands Edison Company (one of which was petitioner, owning 910 shares) and the Southern Cities Utilities Company, entered into a written contract of sale of the Islands Edison Company stock. At no

time did petitioner agree with Whetstone or the Southern Cities Utilities Company, verbally or in writing, to make sale to him or to the Southern Cities Utilities Company of any of said stock except the aforesaid 910 shares of the Islands Edison Company."

The opinion recites—The Commissioner's " theory is that upon the declaration of the dividend on March 22, 1928, petitioner became indebted to its stockholders in the amount of $1,071,426.25, and that the discharge of that liability by the delivery of property costing less than the amount of the debt constituted income, citing *United States* v. *Kirby Lumber Co.*, 284 U. S. 1." " The intent of the directors of petitioner was to declare a dividend payable in Islands Edison stock; their intent was expressed in that way in the resolution formally adopted; and the dividend was paid in the way intended and declared.  We so construe the transaction, and on authority of First Utah Savings Bank, *supra* [17 B. T. A. 804; aff'd, 60 App. D. C. 307; 53 F. (2d) 919], we hold that the declaration and payment of the dividend resulted in no taxable income."

The Commissioner asked the Circuit Court of Appeals, 4th Circuit, to review the Board's determination.  He alleged, " The only question to be decided is whether the petitioner [taxpayer] realized taxable income in declaring a dividend and paying it in stock of another company at an agreed value per share, which value was in excess of the cost of the stock."

The court stated: " There are two grounds upon which the petitioner urges that the action of the Board of Tax Appeals was wrong: First, that the dividend declared was in effect a cash dividend and that the respondent realized a taxable income by the distribution of the Islands Edison Company stock to its stockholders equal to the difference between the amount of the dividend declared and the cost of the stock; second, that the sale made of the

Islands Edison Company stock was in reality a sale by the respondent (with all the terms agreed upon before the declaration of the dividend), through its stockholders who were virtually acting as agents of the respondent, the real vendor."

Upon the first ground, it sustained the Board. Concerning the second, it held that, although not raised before the Board, the point should be ruled upon. "When we come to consider the sale of the stock of the Islands Edison Company, we cannot escape the conclusion that the transaction was deliberately planned and carried out for the sole purpose of escaping taxation. The purchaser was found by the officers of the respondent; the exact terms of the sale as finally consummated were agreed to by the same officers; the purchaser of the stock stated that the delivery of all the stock was essential and that the delivery of a part thereof would not suffice; the details were worked out for the express and admitted purpose of avoiding the payment of the tax and for the reason that the attorneys for the respondent had advised that, unless some such plan was adopted, the tax would have to be paid; and a written agreement was to be prepared by counsel for the respondent which was to be submitted to the stockholders——all this without the stockholders, or any of them, who were ostensibly making the sale, being informed, advised, or consulted. Such admitted facts plainly constituted a plan, not to use the harsher terms of scheme, artifice or conspiracy, to evade the payment of the tax. For the purposes of this decision, it is not necessary to consider whether such a course as is here shown constituted a fraud, it is sufficient if we conclude that the object was to evade the payment of a tax justly due the government.

"The sale of the stock in question was, in substance, made by the respondent company, through the stockholders as agents or conduits through whom the transfer of

the title was effected. The stockholders, even in their character as agents, had little or no option in the matter and in no sense exercised any independent judgment. They automatically ratified the agreement prepared and submitted to them."

A judgment of reversal followed.

Both tribunals below rightly decided that petitioner derived no taxable gain from the distribution among its stockholders of the Islands Edison shares as a dividend. This was no sale; assets were not used to discharge indebtedness.

The second ground of objection, although sustained by the court, was not presented to or ruled upon by the Board. The petition for review relied wholly upon the first point; and, in the circumstances, we think the court should have considered no other. Always a taxpayer is entitled to know with fair certainty the basis of the claim against him. Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised.

Recently (April, 1935) this court pointed out: " The Court of Appeals is without power on review of proceedings of the Board of Tax Appeals to make any findings of fact." " The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to support the findings made." " If the Board has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for further proceedings before the Board." "And the same procedure is appropriate even when the findings omitted by the Board might be supplied from examination of the records." *Helvering* v. *Rankin,* 295 U. S. 123, 131, 132.

Here the court undertook to decide a question not properly raised. Also it made an inference of fact directly

in conflict with the stipulation of the parties and the findings, for which we think the record affords no support whatever. To remand the cause for further findings would be futile. The Board could not properly find anything which would assist the Commissioner's cause.

The judgment of the court below must be reversed. The action of the Board of Tax Appeals is approved.

*Reversed.*