### WILSON COAL LAND CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4065.

Circuit Court of Appeals, Fourth Circuit.
Jan. 5, 1937.

George R. C. Wiles, of Charleston, W. Va., for petitioner.

W. Croft Jennings, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Seawall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency of $21,211.38 in the income tax for the year 1929 of the Wilson Coal Land Company, a Delaware corporation which had its principal place of business at Huntington, W. Va. The determination seems to have been based on a gain which the Commissioner found that the corporation had realized from the sale of certain mining property during the taxable year. The corporation, complaining that the Commissioner had erroneously computed the cost basis of the property, prayed the United States Board of Tax Appeals to redetermine the deficiency; but the Board refused, holding that the taxpayer had not overcome the presumption of correctness attending the Commissioner's decision.

A stipulation filed by the parties shows that the corporation acquired from Harry W. Wilson and the heirs of A. W. Wilson certain tracts of land which they owned in Wayne and Mingo Counties, in the State of West Virginia. The stockholders of the corporation held their first meeting on September 23, 1912, and empowered the directors to issue the full amount of the authorized capital stock of the corporation in the sum of $500,000. On December 28, 1912, at a meeting of the directors, it was resolved that the company enter

into a contract of sale with the Wilsons for the acquisition of the land, in accordance with a resolution of the stockholders (not included in the record), passed at the first meeting recommending the same; and the officers of the corporation were directed to issue to the Wilsons in payment for the land the entire capital stock in the sum of $500,000 which the Board declared to be the fair value of the property. By deed dated April ——, 1913 (the day of the month is omitted), the Wilsons conveyed the property in question to the land company. A memorandum opinion of the Board states that the acknowledgments of the several signers of the deed bear various dates from April 21, 1913, to August 11, 1917, and that the deed was recorded on September 8, 1919, but there is no evidence in the record to support these findings.

According to the stipulation, the stock records of the corporation show that prior to May 14, 1929 (dates are not given), only 150 shares of the capital stock had been issued—that is, 50 shares to each of three owners of the property—and "that on May 14, 1929, the day before the deal was closed with Neal, Irons and Floyd, for the purchase of said stock, 4,850 additional shares were issued under the authority of the resolution of the stockholders adopted on December 28, 1912." The delay in issuing this stock was due to inadvertence, and when the omission was supplied on May 14, 1929, the stock was issued to the vendors of the land who survived and to the heirs of those who had died in the interval in accordance with their respective interests in the property. On May 15, 1929, a meeting of the stockholders and directors of the company was held "at which time all of the stock of the company was transferred to Neal, Irons and Floyd." These are the only statements in the record which indicate the manner in which the ownership of the property was transferred in 1929. The natural inference therefrom is that the transaction was accomplished by a transfer of the stock of the corporation by the stockholders to the purchasers; but the Commissioner and the parties to the cause seemed to assume that the lands were purchased from the corporation and transferred by it to the purchasers, so that the corporation derived whatever profit inhered in the conveyance. The record does not throw any other light upon the manner in which property was disposed of in the taxable year; nor does it show the value of the property when acquired or the price for which it was sold.

The details of the transaction are not disclosed by the 60-day letter of the Commissioner of Internal Revenue of March 21, 1932, wherein the Commissioner notified the taxpayer of an income tax deficiency for the year 1929 and assessed the tax in the sum of $21,211.38. The statement attached to the Commissioner's letter referred for details to the report of a revenue agent, not included in the record, and concluded with the following paragraph: "Your contention that the March 1, 1913, value of the land should be $375,000. cannot be conceded. This office holds that the mineral rights had no market value as at March 1, 1913, in excess of the values fixed by the Board of Equalization and Review in accordance with the statutes of the State of West Virginia."

The Board of Tax Appeals filed a memorandum opinion but made no separate findings of fact. In the opinion, the Board, purporting to set out the facts upon which the taxpayer relied, stated that the taxpayer's contention was that the fair market value of its land on March 1, 1913, and on the date of its acquisition in April, 1913, was greatly in excess of the value computed by the Commissioner. A general reference was made to testimony taken at the hearing said to consist of testimony of offers for the property and expert opinions of value, all of which was directed to proving the value of the property on March 1, 1913. Reference was also made to the resolutions passed at the meetings of September 23 and December 28, 1912, to the acknowledgment and recording of the deed, and to the issuance of the stock as above described. The opinion also stated that the Board on its own motion had previously entered an order reciting that the record before it contained neither testimony nor stipulation as to the date of the acquisition of the property and directing that unless a written stipulation covering the date of the acquisition of the property should be filed, a further hearing should be had at which testimony should be presented on this point; and that notwithstanding this order, the stipulation which was subsequently filed, dealt largely with the procedure or manner of acquisition and contained no proof of the date of acquisition.

Concluding its opinion the Board said: "In this case proof of the date of acquisition is a basic fact. The failure to prove such a fact is not overcome by the fact that the respondent did not direct attention to the necessity for such proof or that the parties apparently assumed at the hearing that the property was acquired before March 1, 1913. The attention of petitioner was subsequently called to this fact and opportunity to furnish such proof afforded. The respondent's determination is prima facie correct and the burden of proof of error rested on petitioner. This burden included proof of all facts, not admitted, essential to a decision in petitioner's favor. Without proof that the property was acquired prior to March 1, 1913, the value of the property on that date can not be used as a basis. As above indicated, the clear inference from petitioner's allegation above quoted is that the property was acquired in April, 1913. If this be taken as true, then the basis for determining gain or loss was the cost of the property at that time. This involved proof of the value of the stock issued for the property. The record, however, is barren of any such proof.

"In the situation confronting us we have no alternative but to hold that petitioner has failed to prove respondent's determination to be in error."

The Board found the record before it in an unsatisfactory state. That before us is even worse, since it omits facts shown to the Board which are important to both parties and necessary to a full understanding of the case. But the Board seemingly overlooked the following paragraph which is found in the stipulation filed by the parties: "5. By deed dated April —, 1913, the heirs of A. W. Wilson, deceased, conveyed the property in question to Wilson Coal Land Company. A certified copy of this deed (omitting description by courses and distances of land conveyed) is attached hereto and made a part of this stipulation. See Exhibit 'Deed.'"

The deed filed as an exhibit purports to be signed by the owners of the property, but the acknowledgments of the grantors do not appear. This stipulation seems to justify a finding that the corporation acquired the lands in April, 1913.

■ For a number of reasons, the case must be remanded to the Board for further proceedings. The stipulation indicates that the new purchasers acquired practical control of the property through a transfer of all the corporate stock by the stockholders; but the determination of the Commissioner and the position taken by both parties in the argument indicate that the property was transferred by the corporation. If as a matter of fact this assumption is incorrect, it may be that the corporation still retains title to the land and made no profit on the transaction, and that whatever profit was gained, was chargeable to the several stockholders in their individual capacities. See General Utilities Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154.

■ Even if we assume that the conveyance to the purchasers in 1929 was made by the corporation, the decision of the Board cannot be sustained. It is based upon the assumption that the corporation failed to establish a basic date of acquisition. But in order to calculate the gain on such a transfer, some basic date must necessarily have been adopted. The Commissioner evidently concluded that the corporation acquired the property before March 1, 1913, for he estimated the value on that date and used it as a basis for determining the gain, having in mind section 113 of the Revenue Act of 1928, 45 Stat. 791, 818, 26 U.S.C.A. § 113 note, which provides that the basis for determining the gain or loss from the sale of property acquired before March 1, 1913, shall be the cost of the property or the fair market value thereof as of March 1, 1913, whichever is greater. This determination under the established rule was prima facie correct and should have been followed by the Board unless it was satisfied from evidence produced by the taxpayer that it was wrong; but the Board declared that, since the taxpayer had not offered any proof that the property was acquired prior to March 1, 1913, the value of the property on that date could not be used as a basis. The Board also held that even if the contention of the taxpayer that the property was acquired in April, 1913, should be allowed, there was no proof of the value of the stock issued therefor, and hence no base for determining the gain had been established. The Commissioner's determination was therefore upheld.

■ The error in the Board's position is that it accepts the correctness of the Commissioner's result but ignores the grounds upon which it was founded. When the

Board, finding no convincing evidence to the contrary, accepted the Commissioner's determination, it necessarily accepted at the same time his underlying findings that the property was acquired before March 1, 1913, and had a certain value on that date. Therefore the Board could not fairly say that the value of the property on that date could not be adopted as a basis; nor could the Board refuse to consider the evidence offered by the taxpayer to show that the true value of the land on March 1, 1913, was in excess of the assessment fixed by the state for local taxation. The testimony was obviously relevant and especially important in view of the fact that assessments of the value of tracts of land for local taxation are quite generally below the actual value of the property. If, on the other hand, the Board concluded that the corporation acquired the property in April, 1913, the evidence offered to show its value on March 1, 1913, was equally pertinent, because in the absence of an unusual situation of which the record gives no hint, there could have been no substantial difference between the value of the property in March and its value in the succeeding month. The corporation paid for the land with its stock but as it had no other property, the value of the stock must have been the same as the value of the land.

The presumption that the Commissioner's determination was correct was no longer conclusive when the taxpayer offered evidence tending to show that it rested upon a false foundation; and the Board was obliged to consider this evidence, even though the taxpayer failed to prove the correct amount of the tax or to show that none was assessable. In Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, the court considered a determination of the Commissioner that in computing the gain upon the sale or retirement of preferred stock of a corporation which had been acquired with certain common stock for a lump sum, the cost of the preferred stock should be ascertained by an apportionment which he accordingly made. The taxpayer offered evidence sufficient to show that the apportionment was unfair and erroneous, and that the determination was therefore excessive; but failed to establish the correct amount to be assigned to the preferred stock as its cost. On this account, the Board of Tax Appeals sustained the Commissioner's determination; but this action was reversed by the Circuit Court of Appeals. In sustaining the latter the Supreme Court said (293 U.S. 507, at page 514, 55 S.Ct. 287, 290, 79 L.Ed. 623):

"We find nothing in the statutes, the rules of the board or our decisions that gives any support to the idea that the Commissioner's determination shown to be without rational foundation and excessive will be enforced unless the taxpayer proves he owes nothing or, if liable at all, shows the correct amount. While decisions of the lower courts may not be harmonious, our attention has not been called to any that persuasively supports the rule for which the Commissioner here contends.

"Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. Lucas v. Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. Frequently, if not quite generally, evidence adequate to overthrow the Commissioner's finding is also sufficient to show the correct amount, if any, that is due. See, e. g., Darcy v. Commissioner (C.C.A.) 66 F.(2d) 581, 585. But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him."

See, also, the decisions of this court in Clinton Cotton Mills v. Commissioner (C.C.A.) 78 F.(2d) 292, 295; Underwood v. Commissioner (C.C.A.) 56 F.(2d) 67, 72.

In view of the uncertainty arising from the present state of the record, we shall not discuss the additional contentions of the taxpayer, that it acquired the property in December, 1912, because in that month the equitable if not the legal title was transferred to it; and that the transfer of the property in 1929 falls within the scope of section 112(b) (5) of the Revenue Act of 1928, 45 Stat. 816, 26 U.S.C.A. § 112(b) (5) and note, which provides that no gain or loss shall be recognized upon the sale or exchange of prop-

erty if the property sold or exchanged is transferred to a corporation by one or more persons solely in exchange for stock or securities of such corporation, and immediately after the exchange, such person or persons are in control of the corporation. With regard to the last-mentioned contention the taxpayer cites Perthur Holding Corp. v. Commissioner (C.C.A.) 61 F.(2d) 785; Ahles Realty Corp. v. Commissioner (C.C.A.) 71 F.(2d) 150; Rice v. Commissioner (C.C.A.) 47 F.(2d) 99; compare Schoenheit v. Lucas (C.C.A.) 44 F.(2d) 476; but does not refer to the condition in sections 113(a) (8) of the statute, 45 Stat. 818, 819, 26 U.S.C.A. § 113 note, that the property be acquired after December 31, 1920.

■ The case will be remanded to the Board for further proceedings. The Board should determine when the lands were acquired by the corporation and by whom the transfer of 1929 was made, accepting the determination of the Commissioner and his basic findings on these points as correct in the absence of evidence to the contrary; but weighing all the relevant evidence, including that already produced and such additional evidence as the parties may offer, in order that the facts necessary to a correct decision of the controversy may be determined.

Reversed and remanded.