WILLIAM R. KENAN, JR., AND LAWRENCE C. HAINES, TRUSTEES UNDER THE WILL OF MARY LILY (FLAGLER) BINGHAM, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94985. Promulgated October 26, 1939.

*Arthur A. Ballantine, Esq.*, and *George E. Cleary, Esq.*, for the petitioners.

*Thomas H. Lewis, Jr., Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $365,-687.12 in the income tax of these petitioners for the year 1935. The petitioners assign as error the action of the Commissioner in including in income an item of $603,447.06 to represent the taxable portion of alleged gains of $1,991,316.75 resulting from the payment in securities of a bequest of $5,000,000 under the will of Mary Lily Bingham to Louise Clisby Francis. The facts have been stipulated and the stipulation is adopted as the findings of fact.

Mary Lily Bingham died on July 27, 1917. She left a will in which she placed her large residuary estate in trust. The will provided in item seventh that the trustees should pay a certain amount annually to Louise Clisby Wise until she reached the age of 40, "at which time or as soon thereafter as compatible with the interests of my estate, they shall pay to her the sum of Five Million ($5,000,000.00) Dollars." The will provided in item eleventh that the trustees, in the case of certain payments, including that of the $5,000,000 under item fifth, should have the right "to substitute for the payment in money, payment in marketable securities of a value equal to the sum to be paid, the selection of the securities to be substituted in any instance, and the valuation of such securities to be done by the Trustees and their selection and valuation to be final."

Louise Clisby Wise became 40 years of age on June 28, 1935. Her name at that time was Louise Clisby Wise Francis. The trustees

decided to pay her the $5,000,000 partly in cash and partly in securities. They paid her as follows:

| | |
|---|---:|
| Cash | $1,029,003.46 |
| Securities, value on July 28, 1935 | 3,949,661.71 |
| Accrued interest on bonds delivered | 21,334.83 |
| | 5,000,000.00 |

Most of the securities delivered had been acquired by the trustees as a part of the estate of the decedent at her death. Those securities had a value of $1,268,541.05 at that time and a value of $3,240,062.50, or an increased value of $1,971,521.45, on July 28, 1935. The Commissioner determined that the distribution resulted in a gain to the extent of the increase in value and that 30 percent or $591,456.44, was taxable to the trust under section 117 of the Revenue Act of 1934. A portion of the securities delivered had been purchased by the trustees on June 15, 1931, and their value on July 28, 1935, exceeded their cost by $19,511.71. The Commissioner determined that 60 percent, or $11,707.03, of that excess was taxable to the trust under section 117. The remainder of the securities transferred were purchased by the trustees on April 29, 1935, and their value on July 28, 1935, exceeded their cost by $283.59. The Commissioner determined that the difference was taxable gain of the trust.

The three items just mentioned total $603,447.06, and the Commissioner added that amount to the income of the petitioners as "additional capital gain" and taxed it as such in computing the deficiency. He explained that the distribution constituted a final disposition resulting in taxable gain to the trust under section 111 of the Revenue Act of 1934.

The petitioners reported the accrued interest of $21,334.83 as income, except to the extent that such interest was exempt, and the Commissioner made no change as to that interest in determining the deficiency.

Section 111 provides that "the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the" basis, and the amount realized "shall be the sum of any money received plus the fair market value of the property (other than money) received." The Commissioner, in article 111-1 of Regulations 86, interpreted the section to mean that any gain realized from "the conversion of property into cash, or from the exchange of property for other property differing materially in kind or extent" would be income. The court said in *First Savings Bank of Ogden* v. *Burnet*, 53 Fed. (2d) 919, that the phrase "other disposition of property" relates only to such other dispositions as are like sales. The petitioners point out that the trustees were not required to negotiate with the beneficiary and merely distributed the securities pursuant

to the directions of the testator as expressed in the will. They argue that the transaction did not resemble a sale, the trust realized nothing in money or other property from the distribution, and, consequently, it realized no gain under the statute.

The case of *Suisman* v. *Eaton*, 15 Fed. Supp. 113; affirmed, *per curiam*, 83 Fed. (2d) 1019; certiorari denied, 299 U. S. 573; rehearing denied, 299 U. S. 621, is in point. The decedent in that case left his residuary estate in trust and the trustee was to pay $50,000 to each of the children of the deceased when he or she became 25 years of age. There was no mention in the will of payment in securities or other property. One child, Minerva, became 25 in 1924. The trustee, with her consent and the consent of the other children, transferred to her, in full satisfaction of her legacy, shares of stock worth $50,025 and received $25 in cash. The trustee filed a return and reported a profit from the transaction. The trustee contended in the suit that the transaction was not a sale or other disposition of property giving rise to taxable gain. The court held that the daughter acquired an equitable right under the will to receive $50,000 in cash upon attaining the age of 25, but no right to any specific assets; the satisfaction of her rights by the transfer of the securities was a "sale or other disposition" of the securities within the meaning of section 202 of the Revenue Act of 1924; the property received (the amount realized) by the trust "was the discharge of the corpus from Minerva's equitable right to receive $50,000 therefrom"; the value of that property was $50,000; and the trust realized a taxable gain of the excess of $50,000 over the basis of the securities.

The present case differs from the *Suisman* case in that here the beneficiary had no right to demand cash but had to take the securities. In other respects the cases are quite similar. The bequest in each was fixed at a definite amount in money. There was no bequest of specific securities in either. The Bingham bequest gave the beneficiary an equitable right to receive $5,000,000 in cash or its equivalent on June 28, 1935, but no right to any specific assets. Her rights, like those in the other case, were a charge upon the corpus of the trust. The trustee had to part with either that amount of cash or securities worth that amount. The discharge was no less important to the trust than it would have been had there been no authority to pay the bequest in securities. Thus, the reasoning of the *Suisman* case would apply as follows: The discharge of the trust obligation represented by her rights was worth $5,000,000 to the trust, the trust in disposing of the securities realized $3,949,661.71 therefrom, and the excess of that amount over its basis for the securities was gain realized from the "sale or other disposition" of the securities. We hold, upon authority of the *Suisman* case, that the disposition was within section 111. Furthermore, the increase in value of the

securities was realized by the trust and benefited the trust to the full extent, since, except for that increase, it would have had to part with other property in its corpus. The disposition of these assets freed other assets of the trust from the charge of the bequest and the estate made a clear gain. Cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.

Cases cited by the petitioners involving dividends paid in kind are not helpful. Where a corporation declares a dividend in a certain amount and later discharges its pecuniary obligation by the distribution and acceptance of property, it realizes gain or loss upon the disposition of the property. *Callanan Road Improvement Co.*, 12 B. T. A. 1109; *Bacon-McMillan Veneer Co.*, 20 B. T. A. 556. But if the declaration provides for payment in kind, no pecuniary obligation is created and no gain or loss results. *Helvering* v. *General Utilities & Operating Co.*, 296 U. S. 200; *Commissioner* v. *Columbia-Pacific Shipping Co.*, 77 Fed. (2d) 759; *First Savings Bank of Ogden* v. *Burnet, supra.* The declarations in the latter group of cases mentioned specific securities and to that extent were more analogous to a specific bequest than to the bequest involved in the present case. An estate has no gain or loss from the distribution of property specifically bequeathed, but the situation is quite different where it discharges an obligation measured in money. Any change in the value of assets specifically bequeathed affects only the beneficiary, but a change in the other case affects the estate rather than the beneficiary.

We are not unmindful of the change in section 113 (a) (5) of the Revenue Act of 1934 from the corresponding provision of earlier acts. The acts just prior had provided that the basis in the hands of a beneficiary of personal property acquired by general bequest was the fair market value of the property at the time it was distributed to the beneficiary. The provision applied, for example, to any personal property received by a residuary legatee. Section 113 (a) (5) of the Revenue Act of 1934 provides that the basis for all property "acquired by bequest, devise, or inheritance" shall be its fair market value "at the time of such acquisition." The petitioners argue that the beneficiary in this case will have to take as her basis the same basis which the trust has had, and if she sells the securities she will be taxed upon the same gain which is being taxed to the trust. Although such a result might be undesirable and not intended, nevertheless, it is not unconscionable. Cf. *Ernest M. Bull, Executor*, 7 B. T. A. 993; *Shaffer* v. *Carter*, 252 U. S. 37. The tax would fall upon two different taxpayers. Furthermore, the beneficiary may have acquired the securities within the meaning of section 113 (a) (5) on June 28, 1935, in discharge of a pecuniary bequest rather than at the death of the testator. Certainly those securities not owned by the testator must have been "acquired" later. The beneficiary received a bequest

of $5,000,000 in cash which could be paid in an equivalent of securities and did not receive a bequest of any securities. Her acquisition of the securities was unlike that of a residuary legatee or heir whose title relates back to that of the testator and who is affected by any change in value of the property. There is reason to give the latter taxpayers the basis of value at the date of death of the testator. The situation of the beneficiary here is quite different and perhaps her basis is the value of the securities when she acquired them in satisfaction of her claim against the trust for cash or its equivalent. Perhaps then for the first time they were appropriated for such use and then for the first time she acquired any interest in them. This, of course, is not the occasion to decide what her basis is, but the application of section 113 (a) (5) is not obvious.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

STERNHAGEN, concurring: Since the *Suisman* decision has been affirmed by the Circuit Court of Appeals to which this proceeding would go on review and certiorari has been twice denied, it gives authoritative support to the present decision. But I can not refrain from expressing a doubt of the soundness of treating the distribution by a trustee at the appointed time as being a "sale or other disposition" of the distributed assets in consideration for value consisting of the discharge of his duty to distribute.

---

LEECH, dissenting: The petitioning trust was created to carry out the testamentary wishes of the decedent. The bequest to Louise Clisby Francis was not pecuniary, it seems to me. It was a legacy of money or securities in the alternative. The purpose, I think, obviously, was to avoid the creation of a money obligation, and to protect the estate and, possibly, the market for these securities, by making the legacy thus alternative. The choice of that alternative was left to the trustees of the testamentary trust. *They* chose and it thus became a legacy of securities. In my opinion, the petitioner therefore "realized" no gain under section 111 of the Revenue Act of 1934, in the transfer of securities to Louise Clisby Francis. Cf. *Helvering* v. *General Utilities & Operating Co., supra.*

That distribution of securities occurred solely by authority of the will of Mary Lily Bingham. Consent of the recipient was not obtained. It was not a requisite. That fact, I think, effectively distinguishes this case from *Suisman* v. *Eaton, supra,* and renders inapplicable the rule applied in *United States* v. *Kirby Lumber Co., supra.*

TURNER agrees with this dissent.