LENCARD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106493. Promulgated June 9, 1942.

*Richard H. Appert, Esq.*, for the petitioner.
*Conway Kitchen, Esq.*, for the respondent.

60

ARUNDELL: If the real nature of the foregoing transaction was the sale of assets of petitioner in consideration of the receipt of its own shares of preferred stock, a gain was realized and respondent must prevail. Art. 22 (a)–16, Regulations 86; *Commissioner* v. *Boca Ceiga Development Co.*, 66 Fed. (2d) 1004; *Allyne-Zerk Co.* v. *Commissioner*, 83 Fed. (2d) 525, affirming 29 B. T. A. 1194. If, on the other hand, the transaction was essentially the liquidation of petitioner's outstanding preferred stock, petitioner realized no gain. Art. 22 (a)–21, Regulations 86; *Meurer Steel Barrel Co.*, 11 B. T. A. 584; affirmed per curiam, 35 Fed. (2d) 1019; *Dill Manufacturing Co.*, 39 B. T. A. 1023.

We have no difficulty in concluding from the stipulated facts that the true transaction between petitioner and its stockholders was a liquidation of the preferred shares and not a sale of securities. The preferred shares were immediately retired and canceled and corporate steps were taken to reduce the capitalization to reflect the retirement of those shares and, to that end, proper papers were filed with the Secretary of State of Delaware to so amend the certificate of incorporation.

Article 22 (a)–21 of Regulations 86, cited above, provides that:

\* \* \* No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. \* \* \*

This regulation has appeared in all regulations since Regulations 74 (1928 Act). It has been carried forth in regulation applicable to the Revenue Acts of 1928, 1932, 1934, 1936, and 1938. As stated by the Supreme Court in *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, 115, "Congress must be taken to have approved the administrative construction and thereby to have given it the force of law."

It is suggested by counsel for respondent that the quoted regulation (article 22 (a)–21 of Regulations 86) applies only to dissolved corporations or those in process of dissolution, and that a gain or loss may be realized in the case of a partial liquidation when the liquidation is not in connection with the winding up of the affairs of the corporation. The difficulty with that argument is that it runs counter to another regulation of the Commissioner which defines distributions in liquidation, article 115–5 of Regulations 86,[1] and also to various decisions of the courts and the Board, which specifically hold that article 115–5, *supra*, when it refers to amounts distributed "in partial liquidation", nowhere limits such distributions to payments made in the course of winding up the corporation. *Commissioner* v. *Quackenbos,* 78 Fed. (2d) 156; *Britt* v. *Commissioner*, 114 Fed. (2d) 10, affirming 40 B. T. A. 790.

The transaction before us clearly comes within the definition of a "partial liquidation" as set forth in article 115–5.

One other point has been suggested. The retired shares were of a preferred issue which, by its terms, was redeemable at $100 per share. This fact, however, does not create an indebtedness owing by the corporation to the preferred shareholders, *Haffenreffer Brewing Co.* v. *Commissioner*, 116 Fed. (2d) 465, nor does the retirement of these shares constitute the discharge of an indebtedness with assets the cost of which was less than the amount of the indebtedness discharged. It is clear from the record that at no time did petitioner have any obligation, in connection with the retirement of its preferred stock, to deliver to the preferred shareholders anything except the property which it did deliver. The transaction was not an undertaking to redeem the preferred stock pursuant to the retirement provisions of the certificate of incorporation and the subsequent discharge of such an undertaking by transferring the petitioner's assets. As stated by the Supreme Court in *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, "This was no sale; assets were not used to discharge indebtedness."

*Dorsey Co.* v. *Commissioner*, 76 Fed. (2d) 339, and *Hammond Iron Co.* v. *Commissioner*, 122 Fed. (2d) 4, relied on by counsel for the respondent, are not in point. In those cases the court held

---

[1] ART. 115–5. *Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation are to be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation are to be treated as in part of full payment in exchange for the stock so canceled or redeemed. *The phrase "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock,* or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. *A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all the shares of a particular preference or series,* or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any part of the stock, whether or not pro rata among the shareholders. [Italics added.]

that the transactions involved essentially the sale of assets of the corporation rather than a partial liquidation of outstanding shares. It may be observed in each of those cases that the shares of stock turned in for preferred were not canceled and retired but were held as treasury stock, nor did the transactions have any of the characteristics of a true liquidation, either partial or complete.

The conclusion already reached makes unnecessary a consideration of an alternative issue covering the taxability of petitioner as a personal holding company.

*Decision will be entered under Rule 50.*