J. A. Folger and Company, a California corporation v. Commissioner.
J. A. Folger & Co. v. Commissioner
Docket No. 5014.
United States Tax Court
1945 Tax Ct. Memo LEXIS 149; 4 T.C.M. (CCH) 710; T.C.M. (RIA) 45243; June 25, 1945
*149 Taxpayer corporation, on December 27, 1940, declared a dividend payable in stock of another corporation. The stock so distributed had a value on the date of the distribution in excess of its cost to taxpayer. Held, the excess of the value of the stock on the date of distribution over its cost did not constitute taxable income to taxpayer. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, followed. Harry R. Horrow, Esq., for the petitioner. T. M. Mather, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income, declared value excess profits and excess profits taxes against J. A. Folger and Company for the year 1940 in the respective amounts of $178,103.68, $109,000.39 and $207,539.07. The issue in controversy is whether, as a result of a distribution in kind made by the petitioner in 1940, the petitioner realized taxable income to the extent of the difference between the fair market value of the property distributed and the adjusted basis thereof. In the event this is answered in the affirmative, a further question is involved, whether such income is subject *150 to excess profits tax. Findings of Fact The facts were all stipulated. A summary of the facts necessary to an understanding of the issue is as follows: The petitioner is a corporation organized in 1890 under the laws of California. Its returns for the year in controversy were prepared on an accrual basis and were filed with the collector of internal revenue for the first district of California. The petitioner was organized to carry on the manufacture and sale of coffee, tea, spices, baking powder, and extracts in the western States. It later extended its operations to include Texas and States in the Mississippi Valley. In 1908, J. A. Folger & Company, hereinafter called the Nevada company, was organized under the laws of Nevada to carry out the sale of coffee, tea, spices and the other products manufactured by the petitioner. At all times, the petitioner and the Nevada company have conducted their business operations, finances and accounts, separately. For some years after the incorporation of the Nevada company the petitioner supported it financially by giving it credit for merchandise supplied for resale prior to the time when the Nevada company manufactured its own supply. *151 The plant, equipment, sales organizations and other facilities of each company were used for the separate benefit of each company. At all times the active management of the Nevada company was in the hands of officers who were neither stockholders nor officers of the petitioner. The sale of spices, baking powder and extracts was discontinued prior to 1931; thereafter the Nevada company confined its operations to coffee and the petitioner confined its operations to coffee and tea. Throughout the year 1940 the issued and outstanding capital stock of the petitioner consisted of 3,610 shares, with a stated value of $631,000. Immediately prior to the distribution of certain shares of stock of the Nevada Company to the petitioner's stockholders on December 27, 1940, the shares of the petitioner were owned as follows: Number of
Name
Shares
Estate of C.E.L. Folger
1,000
Estate of E.B.F. Tibbits
1,310
Elizabeth Moffitt Folger Trust
1,000
Howard Chester Platt Trust
50
Gladys P. Pendleton
50
J. A. Folger III
70
Peter Folger
20
H. L. Moore
50
Evelyn C. Donohoe
20
Genevieve C. Kent
20
John M. and Edith P. Cunning-
ham Trust
20
3,610
Throughout *152 the year 1940 the total issued and outstanding stock of the Nevada company consisted of 36,000 shares of a par value of $25 per share. Immediately prior to December 27, 1940, the stock of the Nevada company was owned as follows (for brevity the various stockholders, 43 in number, are reduced to their original sources by groups): Number of
Name or Group
Shares
Petitioner
12,004
Estate of C.E.L. Folger and her
heirs and successors
3,192
Estate of Elizabeth Moffitt Folger
and her heirs and successors
3,202
C. B. Platt; his heirs and succes-
sors
1,026
R. R. Vall, his heirs and sucessors
676
The Atha Family (management
group)
14,100
The employees of Nevada Com-
pany
1,800
36,000
For some years prior to 1940 the petitioner's business had declined, whereas that of the Nevada company had prospered. The petitioner suffered net losses from its own operations for the years 1925 to 1940, which were largely offset by dividends received from the Nevada company. The undistributed earnings and profits of the Nevada company as of December 31, 1940, were $1,993,045.06, practically all of which (except $3,111.68 at December 31, 1912), had been accumulated *153 since February 28, 1913. The total par value of its stock amounting to $900,000, represented cash subscription paid in on 18,000 shares of $800,000, of which $450,000 has been credited to capital stock and $350,000 to paid-in surplus. On January 1, 1940, the petitioner had earnings and profits accumulated since February 28, 1913, in the amount of $84,391.36. The earnings and profits of the petitioner for the year 1940 were $151,030.30, exclusive of earnings and profits, if any, attributable to the distribution in kind of the shares of stock of the Nevada company hereinafter mentioned, and without diminution for the amount of alleged deficiencies in income tax, declared value excess profits, and excess profits taxes, totaling $494,643.14, as determined by the respondent against the petitioner for the year 1940. The earnings and profits of the petitioner at December 27, 1940, available for the distribution of a taxable dividend on said date were $127,121.66, exclusive of earnings and profits, if any, attributable to the distribution in kind of the shares of stock of the Nevada company, and without diminution for the amount of alleged deficiencies in income tax, declared value excess *154 profits, and excess profits taxes totaling $494,643.14, as determined by the respondent against the petitioner for the year 1940. During the year 1940 the petitioner distributed pro rata to its stockholders cash in the following amounts and on the following dates: Amount
Date
$ 36,100
August 15, 1940
72,200
October 24, 1940
$108,300
The petitioner was not a personal holding company during the taxable year 1940. The petitioner's directors determined to distribute to its shareholders 10,830 shares of stock in the Nevada company which the petitioner owned and on December 27, 1940, the following resolutions were adopted: "RESOLVED: That a dividend is hereby declared, payable ratably forthwith to the shareholders of this corporation of record on its books at the hour of 3:30 P.M. on December 27, 1940, in shares of the capital stock of J. A. Folger & Company, a Nevada corporation, owned and held by this corporation, at the rate of 3 shares of the capital stock of said Nevada Corporation for each share of thiscorporation's stock now outstanding; and be it further "RESOLVED: That all of the 10830 shares of capital stock of said Nevada Corporation comprising *155 said dividend are hereby irrevocably segregated from the other assets of this corporation and are hereby irrevocably assigned and transferred to the respective shareholders of this corporation so ratably entitled thereto, and that the president and secretary of this corporation be, and they are hereby authorized and directed forthwith, in the name and on behalf of this corporation, to endorse the certificate or certificates now held by this corporation and representing said shares comprising said dividend for transfer, and forthwith to deliver said certificates so endorsed to said Nevada corporation for immediate transfer on its books of the shares represented thereby and comprising said dividend to the respective shareholders of this corporation so ratably entitled thereto." Pursuant to said resolutions, the petitioner distributed to its stockholders on December 27, 1940, 10,830 shares of the capital stock of the Nevada company, or three shares of the stock of the Nevada company for each share of the petitioner's stock outstanding. In accordance with said resolutions, there were distributed the shares in the Nevada company to the shareholders in the petitioner in the number set *156 opposite their respective names, as follows: Shares in
Shares
Nevada
Shareholder in
owned in
Company
Petitioner
Petitioner
distributed
Estate of E.B.F. Tibbits
1,310
3,930
Elizabeth Moffitt Folger
Trust
1,000
3,000
Estate of C.E.L. Folger
1,000
3,000
Howard Chester Platt
Trust
50
150
Gladys P. Pendleton
50
150
J. A. Folger
70
210
Peter Folger
20
60
Evelyn C. Donohoe
20
60
Genevieve C. Kent
20
60
John M. and Edith P. Cun-
ningham Trust
20
60
H. L. Moore
50
150
Total
3,610
10,830
Of the 10,830 shares so distributed, 8,004 represented shares purchased in 1909, including an increase thereof through non-taxable stock dividends in 1937. The adjusted cost of such shares was $48,861.63 and their March 1, 1913 value was $97,723.26. The balance, or $2,826 shares, including an increase thereof through non-taxable stock dividends in 1937, was purchased in 1918 at an adjusted cost basis of $25,877.56. The fair market value of the stock of the Nevada company on December 27, 1940, was $90 per share. The respondent determined that the increase in value of the stock of the Nevada company constituted taxable income to the petitioner *157 on the date such stock was distributed as a dividend to the petitioner's stockholders. Opinion VAN FOSSAN, Judge: The question here presented is whether the petitioner realized taxable income to the extent of the difference between the fair market value of the stock of the Nevada company distributed by it on December 27, 1940, and the adjusted basis of such stock. The facts show that of the 10,830 shares of the Nevada company's stock distributed, 8,004 shares had been purchased in 1909, including an increase thereof through non-taxable stock dividends in 1937, at an adjusted cost of $48,861.63. The March 1, 1913, value of these shares was $97,723.26. The balance, or 2,826 shares, was purchased in 1918, including an increase thereof through non-taxable stock dividends in 1937, at an adjusted cost of $25,877.56. Each share of the Nevada company's stock had a value of $90 on December 27, 1940, the date of the distribution. The respondent has determined that the excess of the value of the shares over their cost constitutes taxable income to the petitioner on the date of the distribution. This determination the petitioner assigns as error. An examination of the resolutions authorizing *158 the distribution discloses that the distribution was declared to be payable in shares of the Nevada Company at the rate of three shares of stock of the Nevada company for each share of the petitioner's stock outstanding. Thus the distribution was clearly a distribution in kind. It is well settled that a distribution in kind does not result in taxable income or gain to the distributing corporation. ; ; cf. . As observed in : * * * the distribution was by way of a dividend to the taxpayer's own stockholders; in effect they received in altered form what they had theretofore owned collectively; as no quid pro quo passed to the taxpayer from these distributees, there was no closed taxable transaction. The case before us is to be distinguished from a case where a dividend in a fixed amount is declared and is later satisfied by the distribution of property having a value in excess of cost to the distributing *159 company. Cf. . The respondent concedes that the General Utilities case is against him but argues that it turned mainly on procedural points. While it is true that such matters were considered, they detract in no way from the force of the decision on the point before us. The Court held squarely on facts similar to those here present that the corporation realized no taxable gain on a distribution in kind. We are also unable to agree with the respondent's further contention that the General Utilities case has, in effect, been overruled by more recent decisions. The cases cited by the respondent in support of this contention all involved the discharge of indebtedness definite in amount. We think it clear, under the authorities above cited, that the petitioner realized no taxable gain and that the respondent erred in his determination. It is, therefore, unnecessary for us to consider the petitioner's alternative contention. Decision will be entered under Rule 50.