**WHITE RUBBER CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 5:90 CV 1641.**

United States District Court,
N.D. Ohio, E.D.

Nov. 14, 1991.

Amie L. Bruggeman, Charles E. Zumkehr, Roetzel & Andress, Akron, Ohio, for plaintiff.

Alan M. Shapiro, Dept. of Justice, Tax Div., Washington, D.C., Annette G. Butler, Office of the U.S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

This action is before the Court on cross-motions for summary judgment (Docket Nos. 39 and 40). The Court also has before it reply briefs of each of the parties (Docket Nos. 41 and 42) and joint stipulations of fact (Docket No. 35). A hearing on the motions was held on October 25, 1991. (Transcript ["Tr."]—Docket No. 49). For the reasons that follow, the motion of the plaintiff White Rubber Corporation ("White Rubber") is granted and the motion of the defendant United States of America ("the Government") is denied.

## I.  FACTUAL BACKGROUND.

On February 1, 1985, White Rubber was incorporated in Ohio. From that date until October 31, 1986, it elected S corporation status, pursuant to 26 U.S.C. §§ 1361–1362. On October 31, 1986, White Rubber revoked its S election. In the meantime, on October 22, 1986, the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 ("the Act") was signed into law. The Act changed tax rates and altered tax treatment of certain transactions by corporations.[1]

Apparently there was some confusion regarding the interpretation of the transitional relief provisions found in 26 U.S.C. § 1374, because the Government issued a news release on November 20, 1986, and followed it with Revenue Ruling 86–141 on December 8, 1986. The ruling provided, in part, that pursuant to 26 U.S.C. § 1362(g),[2]

---

1. Notably, the Act repealed the long-established *General Utilities* doctrine, which originated in *General Utilities & Operating Co. v. Helvering,* 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154 (1935), where the Supreme Court held that a corporation does not realize income on the distribution of appreciated property to its shareholders in kind.  26 U.S.C. § 1374.

2. 26 U.S.C. § 1362(g) provides:

If a small business corporation has made an election under subsection (a) and if such election has been terminated under subsection (d), such corporation (and any successor cor-

any corporation that had revoked its S status before October 22, 1986 (the effective date of the Act) could re-elect S status prior to January 1, 1987, by simply filing Form 2553, making reference thereon to Rev.Rul. 86–141. The Government stated that the revenue ruling was being issued because "there [had] been uncertainty regarding the manner in which a corporation [could] obtain transition relief" from the provisions of the Act which repealed the *General Utilities* doctrine.

In light of Rev.Rul. 86–141, on December 31, 1986, White Rubber attempted to re-elect S status. Its rationale was that, although it did not technically fit within the terms of the ruling since it had revoked its S status nine (9) days too late (i.e., on October 31, 1986 rather than on October 22, 1986 as required by the revenue ruling), it was within the Government's discretion, pursuant to 26 U.S.C. § 1362(g), to consent to such re-election. The revenue ruling itself was an example of how the Government did, in fact, choose to exercise its discretion on behalf of certain taxpayers.[3] White Rubber asserts that it was entitled to believe, in light of Rev.Rul. 86–141, that it, too, would be granted relief from the uncertainty that had followed the initial passage of the Act. White Rubber's attempt to re-elect was ultimately unsuccessful when the Government issued a private letter ruling denying the request.

White Rubber subsequently filed an action in this Court captioned, *The White Rubber Corporation v. The Honorable A. Baker, III,* No. C87–2247A. This action was dismissed for lack of subject matter jurisdiction on December 21, 1987.[4] Seeing no other alternative, White Rubber filed its C corporation income tax return for 1987 and paid $2346.00 in taxes. It then sought a refund and, although the Government originally notified White Rubber that the claim for refund was granted, upon reconsideration the Government denied the claim on May 8, 1989. White Rubber filed an administrative protest which was also denied on August 15, 1990. Thereupon White Rubber filed the instant action.

## II. ARGUMENTS RAISED.

### A. *White Rubber's Arguments.*

Over time, White Rubber has refined its arguments before this Court. In its complaint, White Rubber asserted the following claims:

1) that the Government's denial of White Rubber's request to re-elect S status was an arbitrary and capricious use of power which resulted in a deprivation of White Rubber's Fifth Amendment rights to equal protection and due process;

2) that the Government's denial of White Rubber's request violated income tax regulations as amended by Rev.Rul. 86–141, thereby depriving White Rubber of its property without due process; and

3) that Rev.Rul. 86–141 violates income tax regulation 1.1372–5 and constitutes an unlawful and discriminatory application and enforcement of the Internal Revenue Code.

In its Brief (Docket No. 39), White Rubber frames the issue somewhat differently, that is, more narrowly. There it argues simply that the Government *abused its discretion* under 26 U.S.C. §§ 1362(g) and 7805(a) "in denying relief to White Rubber as a taxpayer similarly situated to those allowed relief pursuant to Revenue Ruling 86–141" and "in arbitrarily selecting the date of passage of the Act as the date for discretionary relief[.]" White Rubber's Brief, at 19.

### B. *The Government's Arguments.*

In its reply (Docket No. 42) and its own Motion for Summary Judgment (Docket

---

poration) shall not be eligible to make an election under subsection (a) for any taxable year before its 5th taxable year which begins after the 1st taxable year for which such termination is effective, *unless the Secretary consents to such election.* (Emphasis added).

**3.** White Rubber asserts that Rev.Rul. 86–141 provides relief to all taxpayers *except* those who

revoked their S status between October 22, 1986 and December 31, 1986. Tr., at 5.

**4.** The Court found that White Rubber should pay the tax it owed as a C corporation and then seek a refund and sue in federal court if necessary.

No. 40), the Government argues that plaintiff misstates the standard of review. Rather than reviewing for abuse of discretion, the Government asserts that the review is two-fold:

1) whether Rev.Rul. 86–141 is a reasonable and consistent interpretation of 26 U.S.C. §§ 1362(g) and 1374 (as amended by the Act); and, if so,

2) whether the Government abused its discretion or infringed upon White Rubber's constitutional rights.

Government's Reply, at 6; Government's Motion for Summary Judgment, at 1.

## III. SUMMARY JUDGMENT STANDARD.

It is well established that when considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *United States v. Hodges X–Ray, Inc.*, 759 F.2d 557 (6th Cir.1985); *Tee–Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962). However, the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e). The "adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or otherwise ..., must set forth specific facts showing there is a genuine issue for trial. If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed.R.Civ.P. 56(e).

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)), Therefore, "[i]f the evidence is merely colorable, ..., or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) *(per curiam )*; *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. at 290, 88 S.Ct. at 1593)). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512)). Moreover, summary judgment is appropriate when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511.

## IV. DISCUSSION.

Some confusion arises in this case because of the evolution of the framing of the issue by White Rubber. Initially it asserted that the Government should have exercised its discretion to bring White Rubber within the terms of Rev.Rul. 86–141. The Government, in turn, argued that Rev.Rul. 86–141 was intended to provide relief from the repeal of the *General Utilities* doctrine for S corporations that completely liqui-

dated before January 1, 1989. Since White Rubber was not involved in a liquidation, it was not entitled to coverage under the revenue ruling.

In its reply to the Government's motion for summary judgment (Docket No. 41) and again at the hearing, Tr., 31, White Rubber modified its argument somewhat, saying that regardless of whether it was entitled to coverage under Rev.Rul. 86–141, the Government still had the authority to allow an exception to the five-year re-election rule set forth in 26 U.S.C. § 1362(g) and that it was an abuse of discretion to deny White Rubber the requested relief when, on its own initiative, the Government had provided that very relief to other taxpayers similarly, if not identically, situated.[5]

The Government asserts that for the sake of consistency it cannot allow exceptions to the Act. Exceptions of this kind would potentially open the floodgates to an endless stream of taxpayers who were only a few days late. However, at the hearing on the motions, the Government admitted that since the act became effective, White Rubber is the only corporation that has sought an exception to the re-election rule, Tr., at 34–35, other than those who may have rightfully come within the terms of Rev.Rul. 86–141.

White Rubber is essentially asking this Court to determine whether there is any material difference between corporations who revoked their S status on October 21, 1986 and those who revoked on October 23, 1986 (or specifically in White Rubber's case, on October 31, 1986), such that the Government could reasonably set October 22, 1986 as the cut-off date for relief and refuse to allow any exceptions for taxpayers whose revocations occurred between October 22, 1986 and December 31, 1986.

Although it is arguably quite reasonable to expect astute businessmen (or their attorneys) to be aware enough of the existence of new tax laws to exercise extreme caution in making important decisions affecting their corporations in the days immediately following the effective date of a new law, the strict application of the Act in

this instance has harsh results, especially in light of the confusion regarding the law's applicability, a confusion which even the Government admitted in promulgating its revenue ruling providing relief for all but a small segment of taxpayers.

In this case, White Rubber had for several months been engaged in a process, based on existing tax laws, whereby it would revoke its S status upon reaching a point of profitability. Tr., at 9, 29. It was sheer happenstance that this process culminated on October 31, 1986 rather than on or before October 22, 1986. This is not a case where a taxpayer, in the face of known tax law, made an informed decision and later tried to get out of that decision. Rather, this is a case where the taxpayer was caught between an existing law and a new law, and was expected by the Government to have perfect understanding of that new law immediately upon its passage.

This Court can find no rational basis for the Government's refusal to allow an exception for White Rubber pursuant to 26 U.S.C. § 1362(g). The Government was apparently perfectly willing to allow the exception for all taxpayers except those few whose revocation took place in the waning months of 1986. The Government has produced no convincing argument in favor of its decision regarding this class of taxpayer, including White Rubber.

The Government supplied the Affidavit of J. Thomas Hines ("Hines"), an attorney who worked in the Individual Tax Division of the Office of Chief Counsel of the Internal Revenue Service. The Individual Tax Division was responsible for issuing rulings under subchapter S of the Internal Revenue Code. Hines attests that

[w]ith respect to the general requirements for relief under section 1362(g) of the Code apart from Rev.Rul. 86–141, relief was ordinarily denied unless more than 50 percent of the stock in the corporation was owned by persons who did not own any stock in the corporation when the S election was terminated, or in the absence of such fact, *it could be shown that the event causing the termination* was not reasonably within control of the

5. *See* footnote 3, *supra.*

corporation or shareholders having a substantial interest in the corporation, and *was not part of a plan to terminate the election* in which such shareholders participated.

(Emphasis added). Hines Affidavit, at 5–6, para. 11.

It appears to the Court that, under the Government's own established procedures set forth in the Hines Affidavit, the narrow factual circumstances of this case would fit within the exception permitted when the event (i.e., the situation) triggering the termination was not part of a plan to terminate the election. It is perfectly reasonable to this Court that the average taxpayer would have been making decisions based on the existing tax law and that it was such law that was factored into its plan to revoke its S election. Therefore, this Court finds that it was an abuse of discretion for the Government to refuse to allow an exception, in the face of massive changes in the tax law, for a taxpayer who unwittingly missed a deadline by a few days.[6]

## V. CONCLUSION.

Accordingly, the Court finds that White Rubber is entitled to relief by being allowed to re-elect S corporation status effective December 31, 1986. The Court further finds that White Rubber is entitled to a refund, for tax years beginning with 1986, of the income taxes it paid as a C corporation in an amount equal to the difference between the income tax it paid as a C corporation and that which it would have paid as an S corporation. Therefore, White Rubber's motion for summary judgment is granted with relief as set forth above. The Government's motion for summary judgment is denied.

IT IS SO ORDERED.

---

**6.** The Court also notes that October 22, 1986 was established as the cut-off date informally on November 20, 1986 (when the news release was issued) and formally on December 8, 1986 (when Rev.Rul. 86–141 was issued). The taxpayer revoked its S election on October 31, 1986, before the deadline was even set.