THE DILL MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89583.   Promulgated May 24, 1939.

*F. E. Gleach, Esq.,* and *H. A. Mihills, C. P. A.,* for the petitioner.
*Elmer L. Corbin, Esq., H. D. Thomas, Esq.,* and *A. D. King, Esq.,* for the respondent.

OPINION.

LEECH: In the first issue, respondent bases his disallowance of a deduction for loss on the United States bonds on that part of Regulations 77, article 71, which reads as follows: "* * * No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may be appreciated or depreciated in value since their acquisition * * *."

Similar regulations, with slight differences in wording immaterial here, have been in force since the Revenue Act of 1918. Because such regulations had long been in force without change in the law, Regulations 69, article 548, the prototype of and substantially similar for present purposes to the quoted regulations, was held to be valid in *Hellebush* v. *Commissioner*, 65 Fed. (2d) 902, although there it was found no distribution in kind on dissolution occurred. See also *Central National Bank of Lincoln, Nebraska*, 29 B. T. A. 719. A like conclusion of validity was reached in *Stock Yards Bank of Cincinnati*, 25 B. T. A. 964. In that case, a bank, in competition with the petitioner bank, acquired all of petitioner's outstanding stock through a nominee, and turned it over to the latter. Petitioner thereupon conveyed all of its assets to the competing bank, then the sole stockholder, and dissolved. The stock was surrendered for cancellation. It was held on the basis of the same regulation that the petitioner had realized no gain or loss when it distributed its assets to its sole stockholder in complete liquidation.

Distributions in complete or partial liquidation result in no gain or loss to the distributing corporation. *Helvering* v. *General Utilities & Operating Co.*, 296 U. S. 200, affirming 29 B. T. A. 934; *Columbia Pacific Shipping Co.*, 29 B. T. A. 964; affd., 77 Fed. (2d) 759; *W. P. Fox & Sons, Inc.*, 15 B. T. A. 115; *Chicago Binder & File Co.*, 4 B. T. A. 1002.

Was the transfer of cash, preferred stock, and United States bonds to the syndicate, in exchange for 25,000 shares of common stock in petitioner, a distribution in partial liquidation of petitioner?

The original intention of the parties may have been that the petitioner should acquire the syndicate's common stock with its preferred stock and cash. However, that intention was abandoned. It was not carried out. Petitioner did not, in fact, do that, and the fact controls the tax incidence here. *Weiss* v. *Wiener*, 279 U. S. 333; *Gregory* v. *Helvering*, 293 U. S. 465; *C. M. Menzies, Inc.*, 34 B. T. A. 163; *W. F. Kennemer*, 35 B. T. A. 415; affd., 96 Fed. (2d) 177. The plan, finally adopted and executed, obligated the petitioner to deliver to the syndicate, preferred stock, cash, and United States bonds. The obligation to deliver United States bonds was not a debt payable in money. It could not have been satisfied except

by the transfer of those bonds, assets of the petitioner. See *Helvering* v. *General Utilities & Operating Co., supra.*

The position of petitioner is that since it had no intention to liquidate any portion of its business in the acquisition of this stock interest, no liquidation occurred. However, absence of intent does not contradict the statutory status of liquidation if, in fact, a liquidation occurred, by the cancellation or redemption of capital stock. *Palmetto Quarries Co.*, 30 B. T. A. 544; *Salt Lake Hardware Co.*, 27 B. T. A. 482.

Here a partial liquidation actually occurred. The capitalization of petitioner was reduced from $700,000 to $100,000. The 25,000 shares of common stock, so reacquired, were not held in petitioner's treasury for resale but were canceled and retired. The authorized capital stock of petitioner was reduced from 50,000 to 25,000 shares. Cf. *William A. Smith*, 38 B. T. A. 317.

It follows that petitioner suffered no allowable loss by the distribution of the United States bonds as a part consideration for 25,000 shares of its outstanding common stock.

The second issue is raised by the affirmative allegation in respondent's amended answer that petitioner is subject to the 50 percent penalty of net income for the taxable year, under section 104 of the Revenue Act of 1932, and the consequent request for an increase in the deficiency of $4,992.92, as determined, to the sum of $110,079.94.

Respondent supports this allegation on the ground that petitioner was "availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed." Respondent has the burden of proof. Rule 32 of the Board's Rules of Practice; *Security-First National Bank of Los Angeles, Executor*, 38 B. T. A. 425.

It may be conceded that the shareholders of petitioner would have been obliged to pay surtaxes in a larger amount if more of petitioner's gains and profits had been distributed during the taxable year. "But the taxes under these statutory provisions are not imposed because of effects; avoidance *per se* is not prohibited. It is the *purpose*, the intention motivating a course of conduct, which is made controlling by the very words of the statute. Unless the *purpose* was to prevent the imposition of surtaxes, the tax may not be imposed." *Cecil B. de Mille Productions, Inc.*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713.

True, the proscribed purpose may be evidenced in many ways. See *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754; certiorari denied, 290 U. S. 635; *William C. de Mille Productions, Inc.*, 30 B. T. A. 826. But the contested tax is "highly penal" and thus "While the plain intent of such a statute must be

given full effect, it should be strictly construed and should not be extended to cover cases which do not fall within its letter." *United Business Corporation of America* v. *Commissioner, supra.*

Since the respondent has the burden of proof and petitioner is not a holding company, no presumption of the existence of the proscribed purpose may be indulged here until it be established by the weight of the evidence that there was an unnecessary accumulation of gains and profits. Moreover, respondent is limited to the contention, as he admits, that petitioner "was availed of" during the taxable year, for the prohibited purpose. The respondent argues that the record sustains his burden of establishing that in the taxable year petitioner permitted its gains and profits to accumulate beyond the reasonable needs of its business and that the consequent presumption of the existence of the penalized purpose has not been overcome. See *C. H. Spitzner & Sons, Inc.*, 37 B. T. A. 511.

The question of what are reasonable or unreasonable needs of business is always one of fact. The answer is rarely easy to find. However, the law does not require that "a business should remain static; it must be assumed that any business shall have the right to grow." *William C. de Mille Productions, Inc., supra.* A fortiori, a corporation certainly must have the untrammeled right, within reasonable limits, to financially protect itself and its shareholders.

Justice Holmes once said "A page of history is worth a volume of logic." *New York Trust Co.* v. *Eisner*, 256 U. S. 345. Thus, the economic history of the country and this company is both pertinent and illuminating. So, particularly where, as here, the petitioner is not a holding company but is engaged in a manufacturing business, which is so obviously hazardous from a business viewpoint, we will hesitate before substituting our judgment upon the reasonableness of the corporate accumulations, for that of the directors. See *Klug & Smith Co.*, 18 B. T. A. 966.

The attitude of petitioner toward its earlier gains and profits may have a bearing upon the reasonableness of the accumulation existing in the tax year. See *United Business Corporation of America* v. *Commissioner, supra;* and *C. H. Spitzner & Sons, Inc., supra.* But respondent points to the large corporate surplus account of petitioner in the tax year as constituting "accumulated gains and profits" under the act. However, the greater part of this surplus is the result of accumulations over many years and represents physical plant and improved manufacturing facilities by which the petitioner has been enabled to sustain and increase its income upon which it has already paid income tax.

Little benefit can be obtained by repeating the evidence here. That the plant and production facilities represented by such a large part of petitioner's accumulations were actually used in its business

can scarcely be doubted. Nor, in view of the evidence, does it seem any less certain that they were reasonably needed in the business.

The Board has said in *United Business Corporation of America*, 19 B. T. A. 809, that:

* * * No corporation which is actively engaged in business is to be subjected to the penalty of the statute unless and until it permits its course of conduct to be diverted from its normal business interests by a purpose to save its stockholders from surtax.

Respondent argues that the liquidation of the syndicate common stock was planned when the syndicate bought that stock in 1925; that this was a diversion from its ordinary business interests for the purpose of saving surtax to its stockholders and that this procedure can be repeated and thus deprive the Government of its taxes unless the penalty is imposed here. The answer is that the existence of no such plan is disclosed. In fact, we are convinced the plan to liquidate was born when the liquidation occurred as the result of the petitioner's then pressing and reasonable business need.

At the close of the fiscal year ended in 1931, petitioner had cash on hand in the amount of $149,554.23, and Government bonds which cost it $320,071.41. During the fiscal year ended in 1932, here involved, it realized net earnings of $210,174.03. At the close of the latter year, it had cash on hand in the amount of $343,959.08 and United States bonds which cost it $93,774.42. During this year it had expended about $200,000 in liquidating the common stock interest of the syndicate, and, in addition thereto, it had paid dividends for that year in the amount of $48,152.98.

Investments in securities of outside companies may be evidence that the funds thus used were not reasonably necessary in a corporate business. See *National Grocery Co.*, 35 B. T. A. 163. But such an investment is a far cry from the purchase of Government bonds here. Such investment, *per se*, is not evidence in the present circumstances of the absence of reasonable necessity for the retention of the funds thus used. Nor is that conclusion affected by the facts that the preferred stock was being acquired by petitioner at a price under par and retired, that its earnings for the taxable year, in the amount of $47,727, were used in that acquisition and that the entire preferred issue was retired before maturity. The amount of these investments in Government bonds, just as the cash on hand, is their only value as evidence in the present situation.

More might be said. But, in the face of this record, the conclusion seems inescapable that petitioner has not "[permitted] its course of conduct to be diverted from its normal business interest by a purpose to save its stockholders from surtax." *United Business Corporation of America* v. *Commissioner, supra.*

The consistently conservative policy of petitioner's management was merely continued through the tax year. It is not disclosed that the petitioner loaned money to its shareholders either with or without interest. See *R. & L., Inc.*, 33 B. T. A. 857; affd., 84 Fed. (2d) 721; certiorari denied, 299 U. S. 588; *William C. de Mille Productions, Inc., supra;* and *National Grocery Co., supra.* Not only that, but the salaries of its officers were actually reduced for the taxable year. The petitioner constituted the life work of its operating officers. They had built it and were proud of it. The protection of the economic and financial independence of that work was scarcely less warranted as a business purpose than if petitioner had been an individual.

The issue of preferred stock with the obligation to retire it within five years evidenced a debt. *Palmer, Stacy-Merrill, Inc.*, 39 B. T. A. 636; *Schmoll Fils Associated, Inc.*, 39 B. T. A. 411; *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895; affd., 90 Fed. (2d) 971. And this record, at most, does not establish that the liquidation of the syndicate stock by the partial use of that preferred stock, under the circumstances here, was not required by a reasonable business necessity. Cf. *Sauk Investment Co.*, 34 B. T. A. 732; *Mellbank Corporation*, 38 B. T. A. 1108.

The dividend policy of petitioner may have been conservative. The company was successful. However, on the whole record, it certainly has not been established that petitioner, during the taxable year, permitted its gains and profits to accumulate beyond the reasonable needs of its business. And, even if it had been so established, we believe the same record conclusively overcomes any presumption that such accumulations and the failure to distribute them as dividends were permitted "for the purpose of preventing the imposition of the surtax upon [petitioner's] * * * shareholders." It follows that the contested penalty proposed under section 104 of the Revenue Act of 1932, falls.

*Decision will be entered under Rule 50.*