Dietze & Company, Inc. v. Commissioner.
Dietze & Co. v. Commissioner
Docket No. 107053.
United States Tax Court
1942 Tax Ct. Memo LEXIS 83; 1 T.C.M. (CCH) 93; T.C.M. (RIA) 42597; November 23, 1942
*83 Petitioner corporation since its organization in 1936, has been engaged in the ship brokerage business, its business being both domestic and foreign. In 1938 it had large earnings considering the size of its capital stock. Part of these earnings it distributed in dividends to stockholders and the remainder it carried to earned surplus. The purpose of carrying the undistributed earnings to surplus was to build up a reserve of approximately $50,000 to meet the adversities to petitioner's business which were expected to follow the dislocation of the shipping industry should war break out as the president and directors of petitioner then expected. Held, petitioner was not formed or availed of for the purpose of preventing the imposition of the surtax provided by section 102 of the Revenue Act of 1938 upon its stockholders. Maurice A. Haas, C.P.A., for the petitioner. Harold D. Thomas, Esq., for the respondent. BLACK The Commissioner has determined a deficiency in petitioner's income tax for the year 1938 of $9,711.02. This deficiency is based upon the Commissioner's holding that the petitioner is subject to the surtax imposed by section 102 of the Revenue Act of 1938. There is no issue *84 concerning the correct amount of petitioner's net income. On this net income petitioner has been assessed and has paid income and excess profits taxes of $10,097.28. Petitioner by an appropriate assignment of error contests the correctness of respondent's determination that it is subject to the surtax imposed by section 102. That presents the only issue. Findings of Fact Petitioner is a corporation organized under the laws of the State of Delaware in August, 1936, and duly registered to do business in the State of New York. It filed its return for the period here involved with the Collector for the Third District, New York City. The certificate of incorporation recites very broad objects and purposes of the corporation, including building, furnishing, purchasing, selling, chartering, and operating ships, tankers, barges, etc.; acting as agent, broker; carrying on general shipping, shipping agency and forwarding business, including miscellaneous handling and transportation of merchandise and all classes of freight by land or by water; carrying on also the business of elevator, lighterage, storage, docking and storing of ships of all kinds, also buying and selling oil and gas, petroleum *85 and other products, and buying and selling equipment. Notwithstanding the broad powers granted in its charter, petitioner is primarily engaged in the ship brokerage business. When someone needs transportation petitioner endeavors to find a suitable ship, and similarly when someone has a ship for use petitioner will find a client who can use the ship. Petitioner's earnings are represented by commissions charged for the services performed, based on the amount of freight paid. Petitioner does a domestic business coastwise and also international in its scope. It is virtually all a tanker ship business, involving transportation of liquids in bulk, principally petroleum. Petitioner started out with about ten employees. During the taxable year 1938 it had sixteen or eighteen employees and in the early part of 1942 only eight or nine. It occupies substantial quarters in New York City. It does business with many ship owners all over the world and with any oil company located on any seaboard of the United States. Its gross income from commissions on such business ranged from approximately $28,000 in 1936 to approximately $173,000 in 1940 and such commissions constituted its sole source *86 of income. It has never invested any of its funds in the securities of any other company, nor has it ever owned any kind of security except United States Defense Bonds. It has made no loans to any of its officers or stockholders. Petitioner's president made it a practice to take business trips throughout Europe each year and in May, June and July of 1938 he visited Norway, Sweden, Germany and England. He found that most everybody in the shipping business in those countries was expecting war to come at almost any time and that they were making preparations at that time for the protection of their property and business in the event of war. Upon his return to the United States petitioner's president found the same situation existed in shipping circles here. Knowing that war was very detrimental to the shipping business and consequently to petitioner's business, petitioner felt itself compelled to adjust its financial policy and build up a reserve to protect its business in the event of war. Petitioner, therefore, adjusted its dividend policy so as to maintain a surplus in its business of approximately $50,000, representing the amount deemed necessary to carry the business for two years *87 in the event that earnings all but disappeared and has maintained approximately that surplus from 1938 to date, paying out all subsequent earnings either in the form of dividends or Federal income taxes. At a meeting of petitioner's board of directors, November 25, 1938, the following resolution was adopted: RESOLVED that there be, and hereby is, declared from the surplus profits of the Corporation, a dividend of $10,000 at the rate of $50.00 per share, payable on November 28, 1938, to the holders of record of the stock of the Corporation at the close of business on the 28th day of November, 1938, and the Treasurer is directed and authorized to cause the same to be paid on the specified date. The minutes of that meeting also contain the following recital: * * * That indicated net earnings for eleven months are about $47,000. After allowing for Federal and State taxes of about $12,000 the net is reduced to about $35,000. Declaration of a dividend of $10,000 reduces the surplus for eleven months to about $25,000. It was felt unwise by the officers and directors to declare any larger amount as dividend in the present year for the reason that the company's income in 1939 will be very *88 definitely less than in 1938. This is due to the fact that commissions will be so greatly reduced due to lower charter rates; due to the fact that there are far too many tankers already and so many still under contract to be delivered by the builders. The threat of war during the past few months became most acute and war would of course result in immediate requisitioning of ships and the immediate stoppage of all income. Furthermore, a very considerable portion of the company's income was from nine consecutive voyage charters to sell at high rates for 1938. Not a single one of these charters has been renewed; most of the charters have already expired and the four remaining expire in December or the early days of January 1939. No substitue income has as yet been found. The entrance of the United States into war in December, 1941, had its anticipated result on the shipping business. Petitioner's gross business for the first three months in 1942 was $15,500 as compared to $52,400 for the same period in 1941. Petitioner's net income for 1938 was $54,459.39. Federal income taxes paid that year were $5,613.33, dividends were paid in the sum of $10,000, leaving a balance of $38,844.06 *89 which the Commissioner has treated as section 102 net income and taxed accordingly. Petitioner's capital stock originally consisted of 100 shares, of which A. E. Dietze owned 60 shares; his wife, H. A. Dietze, 25 shares; and their three children, 5 shares each. An additional 100 shares were issued on November 12, 1937, so that during the entire year 1938 the stockholders were as follows: Percent-
age of
No. of
Total
Name
Office Held
Shares
Shares
A. E. Dietze
President
125
62 1/2%
E. H. Roge
Vice President
25
12 1/2%
H. A. Dietze (wife)
25
12 1/2%
E. J. Shields
Treasurer
10
5
J. A. Dietze (son)
5
2 1/2%
R. E. Dietze (daughter)
5
2 1/2%
R. H. Dietze (son)
5
2 1/2%
Total
200
100%
Petitioner's net taxable income for the years named below was as follows: 1936 (From time organized in
August 1936)
$ 4,911.68
1937
34,092.22
1938
54,459.39
1939
17,371.38
1940
36,911.21
Since its organization in 1936 petitioner has paid dividends to stockholders, as follows: 1937
$20,000
1938
10,000
1939
10,000
1940
19,600
Petitioner's earned surplus as shown on its books at the end of each year was as follows: 1936
$ 4,121.20
1937
14,325.80
1938
45,505.14
1939
52,248.95
1940
50,875.82
*90 Petitioner's balance sheet as per books on December 31, 1938, was as follows: Assets
Cash
$76,735.45
Advances
800.00
Furniture and fixtures
1,469.00
Total assets
$79,004.45
Liabilities
Accrued taxes
$ 9.47
New York income tax
withheld
10,192.28
Reserve for Federal In-
come tax in dispute
3,297.56
Capital Stock
20,000.00
Surplus
45,505.14
Total
$79,004.45
After deducting $10,000 for dividends paid and $290.21 and $5,325.12, respectively, for Federal income taxes for 1936 and 1937, the undistributed net earnings of petitioner for the taxable year 1938 amounted to $38,844.06. If this $38,844.06 had been distributed to stockholders, A. H. Dietze would have received
$24,277.54
E. H. Roge would have received
4,855.51
H. A. Dietze would have received
4,855.51
E. J. Shields would have received
1,942.20
J. A. Dietze would have received
971.10
R. E. Dietze would have received
971.10
R. H. Dietze would have received
971.10
Total
$38,844.06
The taxable income reported by A. E. Dietze, president of petitioner, on his returns for the years 1936 to 1939, inclusive, is as follows: 1936
$ 89,434.93
1937
110,744.52
1938
84,317.43
1939
99,271.04
*91 The amount of surtaxes which A. E. Dietze, principal stockholder of petitioner, would have paid in addition to the income taxes which he did pay if petitioner had distributed the undistributed portion of its earnings and profits for the taxable year would have been approximately $13,200. The amount of surtaxes which all the other stockholders of petitioner would have paid under like circumstances as stated above would have been approximately $14,500. Petitioner was not formed nor was it availed of in the year 1938 for the purpose of preventing the imposition of surtax upon its stockholders through the medium of permitting its earnings or profits to accumulate instead of being divided or distributed. Opinion BLACK, J.: The statute which is applicable to this proceeding is section 102 of the Revenue Act of 1938, which is printed in the margin. [1]
*92 Our first question to decide is: Was the petitioner formed for the purpose of preventing the imposition of surtax upon its shareholders? We think this question must be answered in the negative. Petitioner was no mere holding or investment company such as is described in section 102 (b). It was not formed for the purpose of taking over securities from members of the Dietze family and collecting the interest and dividends thereon and withholding the distribution thereof so as to save them surtaxes. On the contrary, it was an active, operating business corporation. It was formed for the purpose of doing a ship brokerage business and an oil brokerage business. The evidence shows that it was quite successful in that field and devoted its activities entirely along those lines. We see no reason, on the record which is before us, to hold that petitioner was formed for the purpose of preventing the imposition of surtax upon its shareholders. On this phase of the issue, we held in favor of the petitioner. Our next and final question is: Was the petitioner availed of in the year 1938 for the purpose of preventing the imposition of surtax upon its stockholders through the medium of permitting *93 its earnings or profits to accumulate instead of being divided or distributed? Petitioner in the taxable year had a net income of $54,459.39. After deducting $10,000 for dividends paid and $290.21 and $5,325.12, respectively, for Federal income taxes for 1936 and 1937, the undistributed net earnings of petitioner for the taxable year amounted to $38,844.06. It is the Commissioner's contention that there was no business need which required petitioner to accumulate these undistributed earnings and that petitioner should have distributed them and that its failure to do so was for the purpose of saving its stockholders from the imposition of the surtax. It is true that petitioner was not in debt and was in excellent financial condition and apparently did not require any great amount of capital to carry on its business. Under ordinary circumstances we should say that there would be no need in 1938 for petitioner to add to its already accumulated surplus, even though it was not large. But the situation in 1938 was not ordinary in so far as petitioner's business was concerned. Petitioner's president, A. E. Dietze, in the summer of 1938 had visited several countries in Europe where petitioner *94 did business and in every country he visited, he found sentiment that war was impending. He returned to the United States convinced that it was only a question of time until war broke out and the shipping business, especially the oil tanker business from which petitioner secured its principal income, would be greatly affected. Dietze made his report to petitioner's directors' meeting in November, 1938, and it was decided to distribute only $10,000 of 1938 earnings to stockholders in dividends and retain the balance in the treasury of the company to meet future needs if war should come. That these fears were not groundless is shown all too well by subsequent events. During the course of the testimony of A. E. Dietze, president of petitioner, the following questions and answers occur: Q. At the end of 1938, December 31, 1938, with an earned surplus and undivided profit of $45,505.14, did you feel you had a sufficient reserve to carry on in the event of an outbreak of war here? A. I thought about $50,000 would carry us for a couple of years, Mr. Haas. Q. Have you maintained that amount or approximately that amount in your earned surplus account from that date on? A. I believe so, *95 possibly a little more, a little less. It seems to us that a $50,000 surplus is no excess amount for an active operating corporation like petitioner to store up against lean years to be expected in its business if and when war was declared by the United States. Therefore, we think we would not be warranted in holding that in the taxable year petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholders. It goes without saying, of course, that the failure of petitioner to distribute a certain portion of its earnings in 1938 did in fact save petitioner's stockholders from the payment of certain surtaxes which they would have otherwise paid, if such earnings had been distributed. That is generally true of any corporation and its stockholders. Respondent lays much stress upon this phase of the case and had introduced the testimony of an auditor in the Revenue Department who has taken the income tax returns filed by petitioner's stockholders and has figured out how much additional surtax each stockholder would have paid if all the earnings of 1938 had been distributed and none of them accumulated. But in the enforcement of section 102, purpose *96 is the important thing. In Cecil B. DeMille, 31 B.T.A. 1161, page 1174 the Board said: But the taxes under these statutory provisions are not imposed because of effects; avoidance per se is not prohibited. It is the purpose, the intention motivating a court of conduct, which is made controlling by the very words of the statute. Unless the purpose was to prevent the imposition of surtaxes, the tax may not be imposed. * * * In the instant case, we think that a reasonable business purpose has been shown for the accumulation of earnings in 1938 and that such accumulations as were made were not excessive for the carrying out of this purpose. Cf. C. H. Spitzner & Son, Inc., 37 B.T.A. 511; Delaware Terminal Corporation, 40 B.T.A. 1180; Dill Manufacturing Co. 39 B.T.A. 1023. Decision will be entered for the petitioner. Footnotes
1. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this title) upon the net income of every corporation (other than a personal holding company as defined in Title IA or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: * * * * *
(b) Prima Facie Evidence. - The fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose to avoid surtax upon shareholders. (c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩