The Lane Drug Company v. Commissioner.
Lane Drug Co. v. Commissioner
Docket No. 1140.
United States Tax Court
1944 Tax Ct. Memo LEXIS 278; 3 T.C.M. (CCH) 394; T.C.M. (RIA) 44131; April 26, 1944
*278 I. R. Morris (an officer), 1106 Citizens Bldg., Cleveland, O., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This controversy involves an income tax deficiency of $29,716.70 for the taxable year ended September 30, 1940. The sole issue is the propriety of the imposition of a surtax for improperly accumulating surplus. The case was submitted on oral testimony and exhibits. The petitioner's income tax return for the period involved was filed with the collector of internal revenue for the northern district of Ohio. Findings of Fact The petitioner is an Ohio corporation, chartered in October 1938. Upon its organization, the petitioner acquired from the Lane Drug Company five operating stores together with the name The Lane Drug Company and has since continued to operate under that name. During the taxable period involved it had issued and outstanding 100 shares of capital stock. Its vice president, Sidney N. Amster, owned 70 shares; its president, William Scher, owned 25 shares; and the balance were held as qualifying shares. The petitioner's books for the respective years ended on September 30, 1939, 1940 and *279 1941 reflect the following: Net income
Cash
after
Surplus,
Dividends
balance,
Inventory,
Year ended
income tax
end of year
paid
end of year
end of year
9/30/1939
$ 35,230.27
$ 34,130.27
$ 1,100.00
$123,194.50
$ 80,114.61
9/30/1940
111,769.06
145,399.33
500.00
252,871.88
84,031.10
9/30/1941
27,132.44
142,926.18
30,000.00
176,872.56
170,518.88
In his individual income tax return for the year 1940, Sidney N. Amster, principal stockholder of petitioner corporation, reported a net income of $36,477.36, upon which a tax of $8,358.24 was reflected and paid. Had the petitioner distributed its net income of the fiscal year ended September 30, 1940, to its stockholders, instead of the tax of $8,358.24 Sidney N. Amster, by reason of receipt of such dividend, would have paid a tax in the sum of $51,659.89 or an amount of $43,301.65 greater than the amount actually reflected on his return as filed. Shortly after its organization the petitioner borrowed from its officers, Amster and Scher, approximately $152,000. These loans were paid in full sometime prior to September 30, 1939. During the period involved the petitioner made no further borrowings *280 from its officers or from banks. During the year 1940 the petitioner leased a building and opened a new store at a cost of between $25,000 and $35,000. The average inventory of each of petitioner's stores is $17,000. The petitioner did not permit its earnings and profits, during the taxable year, to accumulate beyond its reasonable needs and that reasonable accumulation was not for the purpose of preventing the imposition of the surtax on its shareholders. Opinion The respondent determined that the petitioner was subject to tax under the provisions of section 102, I.R.C.[1] The petitioner is admittedly an operating company. The premise of the determination was that petitioner, during the taxable year, permitted its earnings and profits to accumulate beyond the reasonable needs of its business, for the prohibited purpose. *281 The issue is purely factual. Helvering v. National Grocery Co., 304 U.S. 282, 82 L. Ed. 1346, 58 S. Ct. 932. The petitioner did permit its profits to accumulate instead of distributing them in the taxable year. Was that accumulation within the reasonable needs of the petitioner's business or was it "for the purpose of preventing the imposition of the surtax upon its shareholders"? The petitioner has endeavored to prove that its accumulations of earnings and profits during the taxable year were not "beyond the reasonable needs of * * * [its] business", and were not for the prohibited purpose. Among the factors upon which petitioner relies are (1) the corporation had been in existence for only one year and the accumulation was thus dictated as a reasonably justified and intended measure for the uncertain future; (2) a strong cash position was reasonably necessary to enable it to take advantage of cash discounts; (3) picketing of its warehouse and threatened strikes of its employees in the taxable year, to protect against the economic danger of which they were intended, warranted the accumulations; (4) because of the beginning of the war in Europe, petitioner needed cash to acquire *282 a necessarily large inventory, and the accumulation was meant to meet this need; (5) petitioner desired to increase the number of its stores which it intended to bring about by the use of the accumulations; (6) it required better warehousing facilities which were likewise to be provided from the accumulations. Petitioner relies heavily upon (1), supra. Undoubtedly this fact would be important if the venture were a new and untried experiment. But although the corporation was new, the business was an established one. We think the petitioner stresses this fact beyond its real importance here. The argument that a strong cash position was necessary to enable it to take advantage of cash discounts bears only slightly upon the question for consideration. The testimony is to the effect that about $30,000 annually was earned through discounts. Its business, however, was a cash retail business with a comparatively frequent turnover of inventory. It had no receivables among its assets for the taxable year. Petitioner's argument that a labor organization had picketed its warehouse for a few days and that it anticipated further picketing and possible strikes in the future, though not compelling, *283 is of some significance when viewed in connection with the other circumstances. The other considerations are more persuasive, however. Section 102, supra, is not based on the contemplation that a business should remain static. William C. DeMille Productions, Inc., 30 B.T.A. 826, at page 830. Thus it was clearly established by credible testimony that petitioner made various inquiries looking to the purchase of additional stores; that it did reasonably increase the number of its stores. During the taxable year it obtained the lease of a building and opened one new store at a cost of about $35,000. It desired to enlarge and improve its storehouse facilities. This was reasonably necessary. It made an honest attempt to purchase a storehouse but was unsuccessful. Petitioner then consulted with an architect with a view of erecting its own storehouse sufficient to meet its present and probable future needs. This plan contemplated an expenditure of approximately $75,000. The plan was not carried out but although it is not made clear why the project was abandoned, the testimony convinces us that the plan was real and not a mere excuse to support the taxpayer's *284 case here. The most cogent argument, we think, for the petitioner - and based upon what we believe the evidence establishes - is that petitioner reasonably needed a considerably larger inventory than it then had in its business. The sales for the taxable year were $1,887,000. The inventory as of September 30, 1940 was only $84,000. Respondent offered no testimony. Two expert witnesses testified for the petitioner on this point. Both were its competitors in the chain drug store business. One witness testified that the reasonably necessary inventory for a chain of six drug stores would cost from $150,000 to $240,000; the other expert testified that the cost of a reasonably adequate inventory for the petitioner on the volume of business it did would be about $200,000 to $240,000. That qualified testimony, coupled with the fact that petitioner did increase its inventory to $170,000 in the year following the taxable year, and to $231,000 shortly thereafter, is impressive. The respondent relies principally upon the fact that if the petitioner had distributed its net income to its stockholders, its principal stockholder, who owned 70 per cent of the petitioner's outstanding shares, would *285 have paid a tax of $43,301.65 instead of the amount of $8,358.24. This fact doubtless justified the respondent in closely scrutinizing the petitioner's activities. It does not, however, per se establish the prohibited purpose. Trico Securities Corp., 41 B.T.A. 306, 315; Dill Manufacturing Co., 39 B.T.A. 1023. It is but an evidentiary fact to be weighed and we do not overlook its significance. As an operating company, petitioner had the right to legitimate expansion, sufficient storage facilities, an inventory reasonably adequate to meet its increasing volume of business, and to maintain its credit. This record evidences no excessive inventories; no loans to any officers or stockholders; no investments in stock or bonds of other corporations; and no intent to expand into collateral or unrelated lines of business, or to unreasonably expand within its own field. Under the circumstances, we are reluctant to substitute our judgment for that of the directors who are legally charged with the duty of weighing and deciding this important economic question. Thus, giving due consideration to all the evidence, we conclude and *286 have so found that the petitioner did not permit its earnings and profits for the taxable year to accumulate beyond the reasonable needs of its business, and such of those earnings and profits as it did accumulate were not thus withheld for the purpose of avoiding the surtax on its shareholders. Petitioner is sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: 27 1/2 per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus 38 1/2 per centum of the undistributed section 102 net income in excess of $100,000. * * * * *
(c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩