The Syracuse Stamping Company v. Commissioner.
Syracuse Stamping Co. v. Commissioner
Docket No. 4025.
United States Tax Court
1945 Tax Ct. Memo LEXIS 244; 4 T.C.M. (CCH) 371; T.C.M. (RIA) 45118; April 9, 1945
Caleb Candee Brown, Jr., Esq., for the petitioner. Laurence F. Casey, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent has determined a deficiency in income tax for the year 1940, in the amount of $4,690.86. A small adjustment is not contested. The deficiency results chiefly from the determination by respondent that petitioner was availed of in the taxable year for the purpose of preventing the imposition of the surtax on its sole stockholder, so as to be liable for surtax under section 102(a) of the Internal Revenue Code *245 . Petitioner filed its return with the collector for the 21st district of New York. Findings of Fact The facts which have been stipulated by the parties are adopted as part of our findings of fact. A schedule of the balance sheets of petitioner from 1931 to 1940, inclusive, and a schedule of operating statements for the same years are incorporated herein by reference. The facts are as follows: Petitioner was organized in 1908 under the laws of New York. Since incorporation it has conducted a manufacturing business. Its office and plant are located in Syracuse, New York. It manufactures inked ribbon spools for typewriters and other business machines, faucets for creameries and gasoline tanks, door hardware, and carpenters' clamps. It also cuts and stamps metal pieces, chiefly of steel. The authorized stock is 200 shares of capital stock of a par value of $100 per share. Until 1934 all of the stock was outstanding, but since 1934, 109 shares have been held as Treasury stock. John C. Kuckhoff, president of petitioner, has owned 91 shares since 1934. He is the sole stockholder. The 109 shares of stock were purchased from the estate of Charles F. Miller at its book value of $622.84 *246 per share. It has been carried as an asset in the balance sheets of petitioner since then at $67,889.56. Miller was one of petitioner's incorporators. Petitioner carried insurance on his life and received the proceeds of $25,202 upon his death on December 26, 1933. Petitioner paid for the Miller stock out of its earnings and the proceeds of insurance. In 1940 John C. Kuckhoff was president, treasurer, general manager, and a director of petitioner. His wife, Mary, his two sons, Carl and Frederick, and an attorney, Harold Murray, were also directors. Carl was vice-president, assistant treasurer, and factory manager; and Frederick was supervisor and chief inspector in the factory. Petitioner paid base salaries and bonuses in 1940 to members of the Kuckhoff family, as follows: Base
Salary
Bonus
Total
John C. Kuckhoff
$7,500
$15,000
$22,500
Carl Kuckhoff
4,200
7,500
11,700
Frederick Kuckhoff [1]
3,500
7,500
11,000
The bonuses were paid pursuant to a resolution of the directors adopted at a meeting held *247 on December 23, 1940. No dividends have been declared or paid on petitioner's stock during the years 1931 to 1940, inclusive. The following schedule shows petitioner's balance sheets, according to respondent's Exhibit B, taken from petitioner's books, without adjustment of the surplus at the end of each year for income tax liabilities, as of December 31, 1938, 1939, and 1940: ASSETS
1938
1939
1940
Cash
$ 7,472.56
$ 13,605.59
$ 25,313.64
Accounts Receivable
17,212.66
24,115.97
28,035.73
Inventory
23,713.13
26,897.85
32,571.58
Notes Receivable
0
0
0
Total Current Assets
$ 48,398.35
$ 64,619.41
$ 85,920.95
Land
12,366.35
12,366.35
12,366.35
Buildings
63,571.42
63,571.42
63,571.42
Machinery & Equipment
55,935.45
62,975.52
65,555.34
Factory Furniture and Fixtures
4,224.85
4,745.78
5,124.49
Office Furniture and Fixtures
Total
$136,098.07
$143,659.07
$146,617.60
Less Depreciation
48,492.74
52,482.13
58,649.30
Total Depreciated Fixed Assets
87,605.33
91,176.94
87,968.30
Deferred Charges
0
0
0
Treasury Stock
67,889.56
67,889.56
67,889.56
Cash Surrender Value Life Insurance
4,790.40
5,117.55
5,445.00
Other Investments
1,001.00
1,001.00
1,001.00
Total Assets
$209,684.64
$229,804.46
$248,224.81
LIABILITIES AND CAPITAL
Accounts Payable
2,613.82
2,157.91
3,087.75
Federal Income and State Fran. Tax
1,024.36
2,142.98
920.19
Officers' Salaries Payable
0
0
0
Accrued Expenses
411.46
641.53
976.46
Bank Overdraft
0
0
0
Total Current Liabilities
$ 4,049.64
$ 4,942.42
$ 4,984.40
Mortgages Payable
0
0
0
Capital Stock
20,000.00
20,000.00
20,000.00
Surplus
185,635.00
204,862.04
233,240.41 *
Total Liabilities and Capital
$209,684.64
$229,804.46
$248,224.81
*248 From 1934 to 1940, inclusive, the net sales, gross profit, net income, and surplus of the business of petitioner have been as follows: Net Income
Net Sales
Gross Profit
after Taxes
Surplus
1934
$123,945.63
$46,105.07
$ 6,386
$144,597
1935
117,324.67
46,089.87
6,251
150,605
1936
193,475.45
90,526.30
13,895
168,130
1937
221,826.23
79,239.68
9,563
175,475
1938
147,399.05
64,013.15
11,359
185,475
1939
210,299.29
84,500.50
18,251
204,862
1940
237,107.73
93,907.35
17,881
223,240 *
Over the seven-year period the average net sales per year was $178,768.29. Petitioner has an established outlet for its products. It has about 3,600 customers, who are old customers. The number of customers is about constant. They are located all over the United States, from coast to coast, except the purchasers of inked ribbon spools, who are concentrated in the area east of Chicago. Petitioner *249 sells through jobbers, wholesalers, manufacturers, and factory representatives. Inked ribbon spools are sold to concerns who manufacture the ribbon. Sales are made on terms of 30 days, plus two percent after 30 days. Payments are made on time for the most part. Petitioner's losses for bad debts are negligible. The total of deductions for bad debts during the 10-year period ending in 1940 was $880.23. Monthly sales are fairly constant. Accounts receivable at the end of December in 1940 were current accounts, and the amount of such accounts receivable, $28,035.73, was normal. Petitioner carries insurance on the lives of John, Carl, and Frederick Kuckhoff in the amounts of $15,000, $2,000, and $2,000, respectively. It carries an asset of some stock in Accurate Parts Corporation at a value of $1,001. That stock was acquired from a customer in payment for goods which petitioner sold to the customer. The fixed assets of petitioner, consisting of land, buildings, machinery, and equipment cost the total sum of $146,617.60, as of December 31, 1940. Depreciation is taken each year, and charged off, at the rate of three percent on buildings and 10 percent on machinery. A large portion of *250 the machinery consists of punch presses. Since as early as 1919 only one punch press has been scrapped. Machines are reconditioned each year and a few additions are made. From 1931 to 1940, inclusive, there have been no additions to land; or, to buildings, except that in 1937, the book figure for buildings increased $13,526.25, bringing the book figure up to $63,571.42. Additions have been made to machinery and equipment in each year at a cost of from $2,000 to $4,000 a year, except in 1939 when additions were made at a cost of about $7,000. In 1940 additions to machinery were made at a cost of $2,580. Petitioner's current assets, depreciated fixed assets, treasury stock, total assets, and current liabilities, since 1934, according to respondent's Exhibit B, taken from petitioner's books, have been as follows: Current
Depreciated
Treasury
Total Current
Assets
Fixed Assets
Stock
Total Assets
Liabilities
1934
$43,119
$80,972
$67,889
$195,478
$5,880
1935
41,958
78,216
67,889
191,882
6,276
1936
47,111
76,813
67,889
196,231
8,100
1937
43,676
88,183
67,889
204,215
8,739
1938
48,398
87,605
67,889
209,684
4,049
1939
64,619
91,176
67,889
229,804
4,942
1940
85,920
87,968
67,889
248,224
4,984 **
*251 At the end of 1940, petitioner was not committed to the purchase or construction of additional machinery, equipment, or plant; it was not contracting to buy additional land; it was not negotiating for any unusually large contracts to manufacture its products. In 1943 petitioner purchased for cash, $25,000, 18,000 square feet of land adjacent to its plant with the intention of expanding its plant. The cash was taken out of the business. It was not borrowed. In his individual return for 1940, petitioner's sole stockholder reported $19,054.96, net taxable income. If petitioner had distributed its entire section 102 net income, namely $17,475.83 to him, the additional income tax liability of John C. Kuckhoff would have been $6,032.72. At the end of 1940 the liability of petitioner for taxes, exclusive of Federal taxes, was $920.19. The Federal income tax and excess profits tax for 1940, as originally assessed in the returns filed by petitioner were, respectively, $3,491.98 and $94.51. Petitioner was liable for additional capital stock tax of $615; total, *252 $4,201.49. Petitioner kept its books and made its returns on an accrual basis. The earnings and profits of petitioner for 1940 were not accumulated beyond the reasonable needs of its business. Petitioner was not availed of in 1940 for the purpose of preventing the imposition of the surtax upon its stockholder. Opinion In the statement attached to the notice of deficiency respondent has stated that he has determined that petitioner, "in accumulating its earnings beyond the reasonable needs of the business," has been availed of for the purpose of preventing the imposition of surtax on its stockholder. Respondent's determination, as we understand it is, therefore, that petitioner's earnings were accumulated in the taxable year beyond the reasonable needs of the business. Under section 102(c) [1] of the Internal Revenue Code such accumulation of earnings shall be determinative of the purpose to avoid surtax upon shareholders, which is referred to in section 102 (a), unless the corporation shall prove to the contrary by a "clear preponderance of evidence." *253 The question presented is whether the earnings and profits of petitioner for the taxable year were permitted to accumulate beyond the reasonable needs of the business. Petitioner's burden is to prove that they were not so accumulated. The evidence in this proceeding consists of testimony of the president and sole stockholder of petitioner, and of the balance sheets and operating statements for a period of ten years. The evidence shows the following situation: Petitioner is a small manufacturing concern. Its assets consist chiefly of the land on which its plant is located, its plant, and its general equipment which consists largely of machinery. The stock was held for many years by two stockholders. When one of them died in 1933, petitioner took out of its accumulated earnings about $42,687 for the purchase of the stock. It applied $25,202, insurance proceeds, upon the balance of the purchase price. That stock was purchased in 1934 or 1935, or in both years, and since then the stock has been held as Treasury stock. Petitioner could have sold the stock and thereby increased its actual capital but it has not done so. The net earnings after taxes from 1933 to 1939, inclusive, amounted *254 to $69,176.24. In 1930 and 1931 the business was conducted at a loss of $5,631.98 and $10,300.22, in each year. The policy of the directors of petitioner has been to finance all of petitioner's business requirements out of earnings, and petitioner has not adopted a policy of borrowing from banks. Increases in machinery have been gradual, and in each year have cost from $2,000 to $4,000, except that in 1939, additions were made at a cost of about $7,000. Additions to buildings were made in 1939 at a cost of $13,526.25. The total sum taken out of earnings since 1933 for additions to machinery and buildings has been, roughly, $40,854. The total of that sum and the sum spent by petitioner to purchase its own stock is $83,541. Petitioner has not invested its earnings in securities or in property having no relation to its business. It has not followed a policy of making loans out of its earnings to its officers and stockholders. The total assets and liabilities of petitioner at the end of 1940 according to its books was $248,224.81, and the surplus was $223,240.41, without reduction for any reserve for Federal taxes for 1940. Also, total current liabilities at the end of 1940, according *255 to the books was only $4,984.40. All of these figures require comment. In David Bruckheimer, 46 B.T.A. 234, 239, it was said that the weight of authority is against the view that reacquired stock held in the Treasury of a corporation constitutes an asset, and that such stock should be carried on the books of a corporation as an asset. Doubt may be expressed as to whether it was proper for petitioner to carry its Treasury stock as an asset. If it had not been so carried, the balance sheet of petitioner at the end of 1940 would have shown total assets in the amount of $180,335.25, rather than $248,224.81; and on the liability side, the capital and surplus accounts would have been reduced correspondingly, to $175,350.85. Petitioner's balance sheet as of the end of 1940 showed cash of $25,313.64 and total current liabilities of $4,984.40. Among the current liabilities was $920.19 for taxes, but that figure is exclusive of liability for Federal taxes for 1940, as petitioner points out in its brief. Respondent, in his reply brief does not challenge or contest the correctness of this point. It has been stated in the findings of fact that petitioner's income and excess profits *256 taxes for 1940, as originally assessed were $3,491.98 and $94.51, and that petitioner was liable for additional capital stock tax of $615. The total of these items is $4,201.49. That amount reasonably represents a close approximation of the minimum petitioner should have expected to pay on account of its Federal tax liability for 1940. Such sum would increase current liabilities, after increasing accrued liabilities, to $9,185.89. Such increase in the total figure for current liabilities at the end of 1940 makes it apparent at once that the ratio of cash at the end of 1940, in the amount of $25,313.64 to liabilities was different than appears from the balance sheet figures taken from the books. All of the facts pointed out and discussed, above, have been taken into consideration. Such adjustments in the book figures as of the end of 1940 have been noted in petitioner's brief, and we think petitioner has been correct in calling attention to them. Respondent has made no arguments or observations on such adjustments in his reply brief. The only conclusion to be drawn, in such situation, is that respondent recognizes the validity of making such adjustments. What are some of the conclusions *257 to be drawn with respect to the financial condition of petitioner at the end of 1940? It can be reasonably said that whether total assets are taken to be $248,224.81 or $180,335.25, all of the assets of petitioner were being used in the business, and surplus was represented by the current and fixed assets. The two items of cash surrender value of insurance $5,445, and some stock received in payment of an account receivable, $1,001, are of minor significance and are not items which turn the question in either direction. They are neutral elements. We come now to a more particular consideration of the question presented namely, whether the profits for the taxable year were permitted to accumulate beyond the reasonable needs of petitioner's business. Petitioner's president testified that petitioner needed at least $30,000 in cash to carry a volume of business of about $200,000 a year. His testimony stands unrefuted and it appears to represent a reasonable judgment. At the end of 1940, petitioner's net cash was realistically only $16,127.75, after current liabilities of $9,185.89. Accounts receivable were $28,035.73. As we understand the operation of petitioner's business, it is necessary *258 for it to maintain inventories of about $30,000, more or less. If the stock received in payment for an account receivable can be regarded as a liquid asset, which is not shown in the record, then the total of liquid assets as the end of 1940, consisting of the cash, accounts receivable, and stock amounted to $45,164.48. Thus the margin over $30,000 was $15,164.48. The question comes down to whether such fifteen thousand dollars margin of cash or liquid assets, which also happens to approximate the amount of the net income for 1940, was retained to meet the reasonable needs of the business of petitioner, or was permitted to accumulate beyond the reasonable needs of the business. The question is a difficult one. But in this case we may be guided by the dicta that we should hesitate to substitute our judgment for that of petitioner's managers. Petitioner's president testified that increases in the volume of orders would require additional cash, over and above the $30,000 already mentioned, and that increases in business would also require increases in machinery and equipment, and reserves for replacements which would cost more than equipment in use originally cost. Such reasons as were *259 given by petitioner's president for retaining the net profits of the taxable year are reasonable ones. Petitioner's policy of financing its operations out of its earnings is not to be condemned. The evidence does not show that the earnings for the taxable year were accumulated beyond the reasonable needs of the business, or to avail petitioner for the purpose of preventing the imposition of surtax upon its sole stockholder. Petitioner had a right to establish reasonable and conservative reserves for growth and for increased volume of business. While its surplus appears to have been large and to have represented the result of accumulations over several years, it nevertheless represents physical plant and equipment by which petitioner has sustained and increased its business. Petitioner has overcome the determination which the respondent has made, and petitioner is not liable for the surtax imposed by Section 102 of the Internal Revenue Code. Under the issue presented, petitioner is sustained. See Dill Manufacturing Co., 39 B.T.A. 1023. Decision will be entered for the petitioner. Footnotes
1. Frederick Kuckhoff was not an officer of the corporation. His salary does not appear in operating statements showing officers' salaries.↩
*. Without reduction for Federal income and excess profits tax as originally assessed in the total amount of $3,586.49.↩
*. Without reduction for Federal income and excess profits tax as originally assessed in the total amount of $3,586.49.↩
**. Without addition of $3,586.49, the total of Federal income and excess profits taxes for 1940 as originally assessed.↩
1. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: 27 1/2 per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus 38 1/2 per centum of the undistributed section 102 net income in excess of $100,000. * * *
(c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. * * *↩