FIRST STATE BANK OF STRATFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9077. Promulgated April 17, 1947.

*Dorothy Ann Kinney, Esq.*, and *Walter G. Russell, C. P. A.*, for the petitioner.

*Allen T. Akin, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: Did the petitioner realize taxable income by the distribution in kind of notes on October 17, 1942? It relies upon *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, as authority that there was no such income. That case, followed by others to the same effect (*Estate of H. H. Timken*, 47 B. T. A. 494 (518); *National Carbon Co.*, 2 T. C. 57; *Lencard Corporation*, 47 B. T. A. 58; *Ernst Kern Co.*, 1 T. C. 249 (266)), laid down the rule that the distribution, as a dividend in kind, of property which has appreciated in value since acquisition, does not result in gain where the dividend is declared only in the property, not in money the obligation to pay which is then discharged by payment in appreciated property. The petitioner therefore argues that, since it merely distributed the notes in kind to its stockholders, it incurred no tax. The respondent, however, says in substance that, having recovered its capital investment in the notes through deduction for worthless debts in prior years, the petitioner was in 1942 "in the position of realizing income only, from the amounts collected. The petitioner had no asset in the charged off notes which could be the subject of a dividend in kind. Thus the petitioner in declaring the worthless notes as a dividend and assigning them to the stock-

holders has done nothing more than assign the right to receive prospective income from a loss which it had sustained in a prior year." Respondent therefore cites and quotes *Helvering* v. *Horst*, 311 U. S. 112, and cites *Helvering* v. *Eubank*, 311 U. S. 122, both as to nonassignability of income. *National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875; and *Atlas Steamship Co.*, 18 B. T. A. 654, are also relied on. We have studied closely these cases on this interesting question, but in our opinion they do not sustain the respondent's position.

We have here, on its face, a dividend in kind which under the settled law indicated in the *General Utilities & Operating Co.* case, *supra*, is no ground for realization of taxable income; and our problem therefore is: Does the fact of previous charge-off, as worthless, of the notes involved, distinguish that case? We do not think so. Though it is true that the *National Bank of Commerce of Seattle* case, *supra*, states, as respondent points out, that after the loans there involved were charged off and deducted from income, they "were no longer a capital asset but represented income," yet it was held that when they were transferred to another bank, in a nontaxable reorganization, recoveries thereafter made were income, within the broad meaning of section 22 (a), Internal Revenue Code, of the transferee, the transferee having the same basis of zero which the transferor had after the charge-off and deduction from income. Here, instead of transfer in a reorganization, we find a transfer in a dividend in kind, and the *National Bank of Commerce* case seems to us recognition of the principle that, despite their nature as representing income after deduction by the transferor bank, such loans nevertheless are subject to transfer as property and may constitute income to the transferee. The *Horst* and *Eubanks* cases, *supra*, do not help the respondent. That line of authority involves transfers of rights to income, without consideration, where it was denied that the transferor was freed from tax. Here, it can not be said that there was assignment of the notes for no consideration. Distribution of a dividend in kind to stockholders is not gift, and is not without consideration—which appears inherent in the original cost of the stock upon which the dividend in kind is received. We think the logic of the *Horst* and similar cases is not applicable here. The *Atlas Steamship* case involved assignment by a corporation (to its stockholders, for stock canceled) of rights to insurance, after complete loss of a ship. Some of the insurance had already been collected. Held, no dividend of the ship in kind. Here the notes were not lost, nor the mere right to receive future income from them assigned. Though representing, after the charge-off and deduction, income which had replaced the original capital investment in them, they were nevertheless still owned by the petitioner, were

property, and were assigned and transferred—unlike the ship in the *Atlas* case or the bond in the *Horst* case. Not mere interest coupons, but the notes, with all their rights, were assigned to the stockholders. The property which produced the income was assigned—the tree and the fruit. Though not carried on the bank's books as live assets, the notes can not fail to be seen as in fact assets, belongings of the bank, regardless of what they were worth. As such they passed to the ownership of the stockholders, in a transaction which under the authority above noted entailed no income to the petitioner, whether or not values had appreciated. Here the value had appreciated (after recovery of base, reducing it to zero, by the charge-off and deduction), but that is of no import. If, as is said in the *National Bank of Commerce* case, such loans (though called mere representation of income) became capital assets in the hands of the transferee in a reorganization, here in our view they passed as property to the stockholder distributees-in-kind, bearing with them the right to income, so that the later recoveries on them in 1942 belonged to the stockholders, not to the petitioner. That the petitioner had in previous years recovered its base by deducted charge-off does not eliminate application of the *General Utilities* case and those following it.

Though the respondent also suggests application of *Helvering* v. *Clifford*, 309 U. S. 331, because he says the bank retained control, after the dividend, of the disposition of the money collected, we do not view this as a case involving the principles enunciated in that authority, nor the facts as sufficient for its application. The stockholders were owners of the notes after the assignment, and neither the fact that the stockholder managing their collection was also a director, nor the fact of decision by stockholders who were directors as to time of disposition of recoveries, nor discussion, after the dividend, of the dividend notes by the directors, indicates such control as comes within the ambit of the *Clifford* doctrine. The stockholders plainly could have recovered the notes against the bank and were aware of the distributions.

We conclude and hold that the recoveries on the notes in 1942 were not income to the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: If a distribution in property is made to stockholders and all that the transaction envisages is a receipt in kind, it may be that the aspect of gain[1] to the corporation lacks significance. But where the circumstances are such as to suggest that the true character of the operation is the receipt of cash the courts will, as ordinarily

---

[1] But the loss gander does not follow the gain goose. *R. D. Merrill Co.*, 4 T. C. 955.

in surveying tax consequences, renounce the shadow and grasp the substance, and will treat as distributed that which it becomes plain the parties intended the corporation should relinquish and the stockholders should obtain. The principle broadly involved is that an assignment of anticipated future income will not relieve the assignor of tax.

Thus, in *Commissioner* v. *Court Holding Co.*, 324 U. S. 331, the gain from a sale purportedly carried out by stockholders was, notwithstanding a distribution of the property to them, attributed to the corporate predecessor. And in the much earlier case of *Atlas Steamship Co.*, 18 B. T. A. 654, the proceeds of insurance policies on a lost vessel were viewed as cash distributions to the corporate taxpayer's shareholders, resulting in gain to it, notwithstanding "that the stockholders were assigned the right to receive the proceeds of the insurance policies direct from the [insurance] companies rather than from the petitioner." Of course, in that case the corporation, being on a cash basis,[2] would not have been chargeable with the gain represented by the excess of the insurance over the basis of the vessel until the insurance had actually been collected. On the assumption of the present case that a dividend in kind of the insurance could be declared before the cash was actually received, which would exculpate the corporation, *Atlas Steamship Co.* should have been decided the other way.

The *Atlas Steamship* doctrine in fact goes back to *Ormsby McKnight Mitchel*, 1 B. T. A. 143,[3] decided in 1924, which is in turn the direct progenitor of *Lucas* v. *Earl*, 281 U. S. 111, and *Burnet* v. *Leininger*, 285 U. S. 136, and the collateral ancestor of such more modern and familiar pronouncements as *Griffiths* v. *Helvering*, 308 U. S. 355; *Helvering* v. *Horst*, 311 U. S. 112; and *Lusthaus* v. *Commissioner*, 327 U. S. 293.

It hence seems totally unnecessary to attempt to extend the doctrine of *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, to such a proceeding as this. The facts make it clear that it was not property in the true sense of which petitioner was making a distribution. Petitioner was about to collect in cash the proceeds of the notes, which would then have been income to it upon receipt, and merely assigned to its stockholders this anticipated right to expected cash income. It was the prospective receipt of income from notes which had incidentally a zero basis that was anticipated and in fact dealt with. The course of conduct of the parties, the fact that the notes were mani-

---

[2] If it be suggested that the present petitioner is on the accrual basis, the case against it becomes even stronger. In that event, when the notes reached the point of being apparently collectible, as they clearly did in the present tax year, they were thereupon automatically accruable to petitioner as income. *Clifton Manufacturing Co.* v. *Commissioner* (C. C. A., 4th Cir.), 137 Fed. (2d) 290; certiorari denied, 302 U. S. 720.

[3] And see *Mitchel* v. *Bowers* (Dist Ct., S. Dist. N. Y.), 9 Fed. (2d) 414; affd. (C. C. A., 2d Cir.), 15 Fed. (2d) 287; certiorari denied, 273 U. S. 759.

festly regarded as collectible, at least to a significant extent,[4] the actual process of collection, the details of receipt and distribution, all unite in convincing proof that only upon the collection of the anticipated cash was there to be any real transfer from corporation to stockholder. Since respondent is proposing to add to petitioner's income only the amount actually realized upon the notes in the month or two of the tax year succeeding the purported assignment, it seems to me this was clearly the income of the corporation before it came to the stockholders and that the deficiency should accordingly be sustained.

TURNER, HILL, HARRON, and HARLAN, JJ., agree with this dissent.

---

[4] The findings show that notes which had only a "remote chance of collection" were not assigned at all.