OPINION. Leech, Judge: The issue is whether, under the facts disclosed by this record, the gain realized upon the sale of 10,000 shares of the capital stock of Pacific-Atlantic by American-Hawaiian, sole stockholder of petitioner, can be attributed to petitioner, which had previously distributed such shares in the taxable year 1940 as a dividend in kind. The respondent contends that the gain is taxable to petitioner since: (a) The transfer was without any business purpose and solely for tax saving purposes; (b) the sale was, in substance, a sale by petitioner; and (c) the appreciation in value of the stock is taxable to petitioner even though there was a valid distribution in kind. The respondent argues that, where a controlled corporation distributes property to its parent, without any business purpose and solely for tax-saving purposes, such distribution should be disregarded and the gain resulting from the sale by the parent treated as taxable to the controlled corporation. The respondent does not contend that the corporate entity should be disregarded. In support of this position he relies upon Gregory v. Helvering, 293 U. S. 465; Higgins v. Smith, 308 U. S. 473; Crown Cork International Corporation v. Commissioner, 149 Fed. (2d) 968; Fairfield Steamship Corporation v. Commissioner, 157 Fed. (2d) 321; certiorari denied, 329 U. S. 774; Adamas v. Commissioner, 155 Fed. (2d) 246; and Bazley v. Commissioner, 155 Fed. (2d) 237; affd., 331 U. S. 737. Cf. Survaunt v. Commissioner, 162 Fed. (2d) 753. The business purpose test has been often applied in cases involving the reorganization sections of the revenue acts; in certain other instances we have not regarded the test as of controlling importance. Cleveland Adolph Mayer Realty Corporation, 6 T. C. 730; First State Bank of Stratford, 8 T. C. 831; W. P. Hobby, 2 T. C. 980; Stanley D. Beard, 4 T. C. 756. We do not think the rule should be applied in the instant case. Generally, individuals organize business corporations with the expectation that dividend payments will eventually result from their operations. It is the province of the corporate directors to determine the time and the character of the dividend payment. It is unimportant here whether the stockholder is an individual or a corporate entity. If the declaration of a dividend is genuine and the transfer is unconditional and final, it is effective as such. Only where the transaction is unreal or a sham may it be disregarded for tax purposes. The respondent makes no such claim here. The contention of the respondent that the sale was “in substance” a sale by petitioner is based on the rationale of Fairfield Steamship Corporation v. Commissioner, supra; Commissioner v. Court Holding Co., 324 U. S. 331. This argument is predicated on the following facts. Petitioner, as early as June 1940, was aware that the principal stockholders of Pacific-Atlantic were desirous of disposing of their interests; it had already sold nine of its ships; a meeting of the large stockholders was called on June 10, 1940, to discuss an offer of the British Ministry of Shipping to purchase the four remaining ships at $50 per deadweight ton; that Dant, who was not in favor of selling the ships, assured the other stockholders “against any loss if the ships were not sold either by buying them or working out some other arrangement”; and the parties then reached a basis for the valuation of the common stock of Pacific-Atlantic. The respondent says that petitioner, in order to minimize its state and Federal tax liabilities, thereupon determined to declare a dividend in kind of such shares, so that the gain would be realized by American-Hawaiian, its sole stockholder. The weakness of respondent’s argument lies in the fact that at this, June 10,1940, meeting no plan was agreed upon respecting Pacific-Atlantic. Neither petitioner nor any other stockholder agreed to sell their shares in Pacific-Atlantic. Dant made no definite com■mitment. In what form his assurance against loss by the stockholders if the offer of the British Ministry of Shipping was not accepted would be carried out was not then disclosed. Dant testified that at that time he was not in a position to purchase the shares of Pacific-Atlantic either individually or through the companies he controlled. Petitioner and the other stockholders of Pacific-Atlantic were free to accept or reject any plan that Dant might submit. Petitioner declared its dividend in kind on October 21, 1940. At a subsequent meeting held in New York City on October 31, 1940, Black, attorney for Dant, suggested the sale to Dant of the four remaining ships of Pacific-Atlantic at $35 per deadweight ton. This proposition was rejected. Black then suggested a further meeting with Dant on the west coast. Such meeting was held in San Francisco on November 11, 1940. A sale of the four ships to Dant at $35 per ton was again advanced and rejected. Later, on the same day, Dant offered $60 per share for the Pacific-Atlantic stock, provided the stockholders would adjust the price to reflect possible additional tax liabilities that might attach to Pacific-Atlantic in the near future. This offer was accepted and finally resulted in the purchase of all the shares of Pacific-Atlantic stock. This was the first intimation to American-Hawaiian that Dant would be willing to buy the stock instead of the ships. When this offer was made, petitioner was not the owner of the shares. The purchase was made by States Steamship Co., which was neither directly nor indirectly controlled by either petitioner or its parent, American-Hawaiian. There is not present here a situation where negotiations for the sale had been pushed to an advanced stage or had even been started by the corporation prior to the distribution or dividend so as to bring the instant case within the rationale of Fairfield Steamship Corporation v. Commissioner, supra; Commissioner v. Court Holding Co., supra; Wichita Terminal Elevator Co. v. Commissioner, 162 Fed. (2d) 513. In the circumstances the conceded fact that when the dividend in kind was declared petitioner had knowledge that if Pacific-Atlantic were liquidated or its shares purchased it would have a large taxable gain is of no legal significance. Gregory v. Helvering, supra; Acampo Winery & Distilleries, Inc., 7 T. C. 629. Likewise, we think it unimportant that petitioner in June 1940 chose to increase its capitalization by the sale of further shares to its parent, American-Hawaiian, rather than attempting to raise additional funds by the sale of the 10,000 shares of Pacific-Atlantic. Such a choice was properly a matter relating to internal management of the corporation. The respondent’s final contention, that the appreciation in value of the Pacific-Atlantic shares is taxable to petitioner, also lacks merit. Respondent concedes that the case of General Utilities & Operating Co. v. Helvering, 296 U. S. 200, holds otherwise. He suggests, however, that the Supreme Court has recently broadened its concept of the realization of income. Helvering v. Midland Mutual Life Ins. Co., 300 U. S. 216; United States v. Joliet & Chicago R. Co., 315 U. S. 44. The General Utilities case has been repeatedly followed. Estate of H. H. Timken, 47 B. T. A. 494, 518; National Carbon Co., 2 T. C. 57; V. U. Young, 5 T. C. 1251. We do so here. Petitioner having made certain payments on account of the asserted deficiency, Decision will be entered wnder Rule SO.