Louisiana Irrigation and Mill Company v. Commissioner.
Louisiana Irrigation & Mill Co. v. Commissioner
Docket No. 49776.
United States Tax Court
T.C. Memo 1955-320; 1955 Tax Ct. Memo LEXIS 23; 14 T.C.M. (CCH) 1252; T.C.M. (RIA) 55320; November 30, 1955
*23 Held, a corporation did not realize taxable income by distributing as a dividend to its stockholders a portion of its rice inventory having a value in excess of cost. Martin M. Lore, Esq., 107 William Street, New York, N. Y., for the petitioner. S. Jarvin Levison, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in excess profits tax liability of petitioner in the amounts of $26,646.12 and $17,434.47 for the years *24 1944 and 1945, respectively. Respondent in the instant case is making another attempt to increase the taxable income of a corporation because of a dividend distribution in kind. Petitioner is a Louisiana corporation and filed its corporation income and declared-value excess profits tax, and excess profits tax returns for the years in question on the accrual basis of accounting with the collector of internal revenue for the district of Louisiana. [Findings of Fact] During the years in question petitioner was engaged in the business of rice irrigation. It owned various irrigation canals in Louisiana together with pumping plants and relift stations. It pumped water from the public streams into these canals and delivered it to the farmer's field. For this, petitioner received a share of the crop when harvested (usually one-fifth). Petitioner had its own bonded warehouses where it stored rice for itself as well as the farmers. Another minor part of its operations was the handling of fertilizer, twine and sacks for the convenience of the farmers. Most of its income was derived from the sale of the rice. Petitioner had outstanding 15,000 shares of common stock having a par value *25 of $100 per share and had approximately 100 stockholders. Petitioner had a deficit of $151,555.98 at the end of 1944 and $93,710.19 at the end of 1945. During 1944 and 1945 petitioner's board of directors passed resolutions declaring dividends in kind of Blue Rose Rough Rice out of inventory, which was carried on the books at cost, as follows: Date of
Pounds of Rice
Pounds
Resolution
Distributed
per Share
Cost
Mar. 21, 1944
1,075,680.00
71.86
$25,590.20
Mar. 31, 1944
598,762.39
40
14,514.05
Jan. 9, 1945
1,197,524.78
80
27,529.78 The rice distributed had been included in the closing inventory of the previous year. Following each of the above resolutions petitioner's president sent a letter to the stockholders informing them of the dividend. The letter also stated that the stockholders could deal with the rice as they saw fit, but for those not living in the vicinity who wished to avail themselves of the service, the First National Bank, Crowley, Louisiana, had agreed to act as agent in selling the rice on a competitive bid basis at a charge of five cents per bushel. The letter with respect to the resolution of March 21, 1944 also stated that *26 the Office of Price Administration had proposed ceiling prices for rough rice, effective April 15, 1944, which were considerably lower than the prevailing market price; and each stockholder was advised to act without delay if he wished to sell. All of the letters contained a bonded warehouse receipt representing the quantity of rice distributed to each stockholder and a form of power of attorney which the stockholder could use to authorize the above bank to sell his rice. The rice which was distributed to the stockholders was physically segregated in the warehouse. The record contains no competent evidence with respect to the disposition of the rice by the stockholders. The plan of making distributions in kind was suggested by petitioner's public accountant who was compensated for the plan on the basis of the amount of rice distributed. Because petitioner would have been required to pay a high tax on the income derived from the sale of the rice distributed, it was able to pay a much larger dividend in kind than it could pay in cash with the same effect on its capital structure. On the basis of fair market value of the rice as determined by respondent, the stockholders received *27 a dividend of around five dollars per share in 1944 and three dollars per share in 1945. Petitioner made further dividend distributions of rice inventory in 1946, 1947, 1948, 1949, 1950, and 1952, but paid no cash dividends during that period. On its returns for 1944 and 1945 petitioner computed its cost of goods sold as follows: 1944
1945
Beginning inventory
$296,024.39
$266,031.34
Other costs
221,637.18
231,437.82
Total
$517,661.57
$497,469.16
Less ending inventory
266,031.34
332,437.90
Cost of goods sold
$251,630.23
$165,031.26 No schedule of "other costs" is included in the returns. In answer to the question with respect to its method of valuing inventory, petitioner answered "Cost" on its 1944 return and "Lower of C or M" on its 1945 return. The statement attached to the statutory notice of deficiency shows that respondent increased petitioner's gross income by $31,059.54 in the year 1944 and $18,907.83 in the year 1945 because of the distributions of rice inventory. The explanation of the adjustment for the year 1944, which is identical for the year 1945 except for the year and the amount, is as follows: "(a) It is held that under *28 the provisions of section 22(a) of the Internal Revenue Code, you realized taxable income in the amount of $31,059.54 upon the distribution to your stockholders in the year 1944 of rough rice inventory, which income you failed to report on your return." The amounts of the adjustments were determined by deducting the cost of the rice distributed from what respondent determined to be the fair market value of the rice distributed at the time of the distribution. [Opinion] Respondent states his position as follows: "Petitioner's distributions of portions of its inventory (a major income producing property) were nothing more than a scheme to avoid its tax responsibilities and, therefore, respondent's determination should be sustained." In order to uphold respondent's determination it would be necessary to hold that a corporation may realize taxable income upon a dividend distribution in kind in the absence of a specific statutory provision. (Cf. section 44(d) of the 1939 Code with respect to the distribution of installment obligations.) However, the rule derived from the Supreme Court's decision in General Utilities & Operating Co. v. Helvering, 296 U.S. 200 *29 that a corporation does not realize gain by reason of a distribution of its property even though the value of the property distributed may exceed its cost to the corporation, is now generally accepted. Natural Gasoline Corporation v. Commissioner ( C.A. 10), 219 Fed. (2d) 682, affirming 21 T.C. 439; V. U. Young, 5 T.C. 1251; National Carbon Co., 2 T.C. 57; S. Rept. 1622, 83rd Cong., 2d Sess., at p. 46. Respondent attempts to distinguish the General Utilities case because the petitioner in the instant case distributed part of its inventory while there the taxpayer distributed corporate stock. However, we see no basis for reaching the opposite result because of this purported distinction. Also, a corporation either does or does not realize gain on a dividend distribution in kind, and the motive for the distribution is wholly immaterial. True, it is often held that where a corporation makes a sale of its property it is taxable on the gain even though, because of a corporate distribution the stockholders are in form the vendors. Cf. United States v. Lynch (C.A. 9), 192 Fed. (2d) 718, certiorari denied 343 U.S. 934; *30 Commissioner v. Transport, Trading and Terminal Corporation (C.A. 2), 176 Fed. (2d) 570, certiorari denied 339 U.S. 916. In those cases, because the distribution in kind had no business purpose other than to avoid taxes, the distribution was disregarded and the gain was attributed to the corporation which in fact made the sale. But see Ripy Bros. Distillers, Inc., 11 T.C. 326; Acampo Winery and Distilleries, Inc., 7 T.C. 629; United States v. Cummins Distilleries Corporation (C.A. 6), 166 Fed. (2d) 17. Here, however, the petitioner clearly did not either in fact or in form sell the rice which it distributed to its stockholders; and furthermore, respondent is not contending that the distributions should be disregarded, but, to the contrary, is apparently contending that the petitioner realized gain as a result of the distributions. Respondent also relies on Commissioner v. First State Bank of Stratford (C.A. 5), 168 Fed. (2d) 1004, reversing 8 T.C. 831, certiorari denied 335 U.S. 867, where a corporation declared a dividend of notes receivable which had been charged off as worthless *31 and deducted in previous years. It was held upon the basis of Helvering v. Horst, 311 U.S. 112, that the distribution was nothing more than an assignment of income which when received or collected was taxable to the corporation. See also Floyd v. Scofield (C.A. 5), 193 Fed. (2d) 594. Here, however, respondent is attempting to tax the distribution, not the receipt of income, and furthermore the distribution of the rice was not an assignment of income as no gain could be realized on the rice until it was sold or exchanged. Cf. Campbell, Jr. v. Prothro (C.A. 5), 209 Fed. (2d) 331. Respondent further contends that petitioner switched from reporting its inventory on the cost basis to the lower of cost or market without permission and that the returns indicate a failure to deduct the cost of the rice distributed in computing the cost of goods sold. These contentions may or may not be valid, but they are wholly foreign to and have absolutely no bearing upon the issue presented. Because of other uncontested adjustments, Decision will be entered under Rule 50.